# EXHIBIT C

WMP:WK/JPL
F. #2011R02049

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

    - against -                    16 CR 532 (NGG)

PLAZA CONSTRUCTION LLC,
successor to PLAZA CONSTRUCTION
CORP.,

           Defendant.

– – – – – – – – – – – – – – – –X

## DEFERRED PROSECUTION AGREEMENT

The defendant PLAZA CONSTRUCTION LLC, successor to PLAZA

CONSTRUCTION CORP. (collectively, "PLAZA"), pursuant to a duly authorized Board of

Directors Resolution (a copy of which is attached hereto as Exhibit A), and the United States

Attorney's Office for the Eastern District of New York (the "Office") hereby enter into this

Deferred Prosecution Agreement (the "Agreement").[1]  Except as specifically provided below,

and in accordance with the provisions specific in paragraphs 17 through 29, this Agreement shall

be in effect for a period of 24 months.

### Information

    1.      The United States will file an Information (the "Information," a copy of

which is attached hereto as Exhibit B and incorporated herein by reference) in the United States

---

[1] Plaza Construction Corp. merged into Plaza Construction LLC in April 2014.  The
conduct referred to in this Agreement and described in the related Information, defined
below, occurred prior to the merger.

District Court for the Eastern District of New York charging PLAZA with conspiracy to commit

mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349.  By

executing this Agreement, PLAZA waives any and all rights it has to have the crimes charged in

the Information presented to a grand jury and prosecuted by indictment and waives any and all

objections to venue and applicable statutes of limitations.  This waiver is knowing, voluntary and

in express reliance on the advice of PLAZA's counsel.

<u>Acceptance of Responsibility</u>

2.      PLAZA accepts and acknowledges as true the facts set forth in the

Information, which is incorporated herein by reference.  PLAZA acknowledges that, as a result

of the conduct of certain executives, officers and employees employed by PLAZA during the

relevant time period (the "Unlawful Conduct"), PLAZA engaged in, and is criminally culpable

for, the charged violation of Title 18, United States Code, Section 1349.

3.      PLAZA accepts responsibility for the Unlawful Conduct set forth in the

Information by entering into this Agreement and by, among other things: (a) the remedial actions

that PLAZA has taken to date and will take (described in paragraph 4 below); (b) PLAZA's

continuing commitment to full cooperation (described in paragraphs 6 through 8 below) with the

Office and its law enforcement agency partners including, without limitation, the Port Authority

of New York and New Jersey, Office of Inspector General; the Federal Bureau of Investigation;

the United States General Services Administration, Office of Inspector General; the United

States Department of Labor, Office of Inspector General; and the New York City Department of

Investigation (collectively, the "Investigating Agencies"); (c) PLAZA's agreement to fulfill all of

the undertakings PLAZA has made in this Agreement, including (i) to pay restitution up to a

total amount of two million, two hundred and twenty-six thousand, two hundred and seventy

dollars and nineteen cents ($2,226,270.19) to the victims of the unlawful conduct described in

the Information (described in paragraph 9 below), (ii) to pay a financial penalty in the amount of

five million, six hundred and nineteen thousand, two hundred and sixty-nine dollars and ninety-

two cents ($5,619,269.92) (described in paragraphs 10 and 11 below), and (iii) to forfeit the sum

of one million, three hundred and fifty-thousand, three hundred and seventeen dollars and forty-

three cents ($1,350,317.43) (described in paragraphs 12 through 16 below); and (d) PLAZA's

agreement to comply in the future with all applicable laws and regulations including federal,

state and local criminal laws and construction contracting laws and regulations.

<u>Remedial & Other Measures</u>

4.      PLAZA represents that PLAZA and its current senior management have

taken actions in response to Office's investigation of the Unlawful Conduct at PLAZA.  These

actions have included and will include the following at PLAZA:

(a)      Making relevant organizational changes, including: (i) creating

General Counsel and Associate General Counsel positions; (ii) establishing a Compliance

Department with a Compliance Director, reporting directly to the General Counsel and to

PLAZA's CEO and President; (iii) establishing a Compliance Committee, comprised of senior

executives from different business units, to provide advice on compliance issues as they arise.

(b)      Instituting annual training for all officers and non-union employees

regarding PLAZA's Code of Business Ethics, as well as laws and requirements relevant to

specific construction projects.  Each employee shall be required to acknowledge in writing that

s/he: (i) has reviewed the Code of Business Ethics and the annual training materials; (ii) will

adhere to the standards set forth therein; and (iii) will report any action inconsistent with those

standards.

4

     (c)     Establishing an ethics hotline for employees to report ethics

violations or concerns to the Compliance Department and the Human Relations Department.

     (d)     Continuing to ensure that PLAZA's clients' bills do not contain

fees beyond those permitted pursuant to the terms of the clients' contracts.  Specifically, pursuant

to formal written policy:

     (i)     at the outset of each construction project, the project
executive and a member of the Legal Department will
review the computerized accounting system's billing
parameters to ensure that they are in compliance with the
terms of the contract underlying the project; and

     (ii)     such a review of the accounting system's billing parameters
will be conducted, at twelve-month intervals, over the life
of each project.

     (e)     Revising Time Sheet/Billing policies to require and ensure that

labor hours are accurately recorded on time sheets and clients are billed only for hours worked,

and at rates and for fringe benefits in accordance with contracts and applicable collective

bargaining agreements, unless specifically disclosed to and approved by the client in advance

and in writing.

     (f)     Continuing the enforcement of enhanced union time sheet

recording and billing procedures.  Specifically, PLAZA will, pursuant to formal written policy:

     (i)     only permit hours actually worked be recorded on time
sheets and paid to PLAZA's union workers;

     (ii)     notify its subcontractors that only hours actually worked
are permitted to be recorded on time sheets and paid to the
subcontractors' union workers;

     (iii)     require each of PLAZA's union workers to certify the
accuracy of all hours recorded on his or her time sheets by
signing them.  For projects that receive any public funding,
each of the time sheets shall contain a warning that
information provided on the time sheet will be provided to

5

the government and that any false statement could constitute a violation of 18 U.S.C. § 1001, or the applicable state or local law analogue;

(iv)     require that each of PLAZA's union workers' time sheets be approved by the foreman as well as one additional supervisor (e.g., field superintendent or project manager) and that each of its foremen's time sheets also be approved by a supervisor;

(v)      require PLAZA's foremen, and any supervisors approving time sheets as described in subparagraph (iv) above, to maintain independent daily records to verify the accuracy of the time sheets;

(vi)     require PLAZA's foremen, and any supervisors approving time sheets as described in subparagraph (iv) above, to review time sheets with other project-related documents to verify the accuracy of hours entered; and

(vii)    prohibit PLAZA's payroll department from processing any time sheet that does not have the requisite approvals.

In addition, PLAZA will:

(viii)   train PLAZA's field superintendents, project managers and any other employees approving time sheets as described in subparagraph (iv) above, on the requirements of a certified payroll on public works or publically funded projects; and

(ix)     maintain the Compliance Director position, whose core functions during the 24-month period of this Agreement will include verifying that the Time Sheet/Billing policies are being followed at all levels. The Compliance Director or his/her designee will conduct regular visits to the project sites, observe actual procedures being followed at the sites, and inquire from union workers, field superintendents, project managers, and any other supervisors approving time sheets as described in subparagraph (iv) above, about their actual implementation of the Time Sheet/Billing policies. The Compliance Director or his/her designee will also conduct regular reviews of union members' hours in an attempt to spot unexplained trends, anomalies or other indicia of fraud or inaccuracy. The Compliance Director will report to PLAZA's Chief Operating Officer and Chief Executive Officer or General Counsel. PLAZA will

6

provide to the Office an update reporting the Compliance Director's activities and findings every three months, or more often upon request of the Office, during the 24-month period of this Agreement.

5.      Moreover, PLAZA agrees that: (a) any policies, procedures or other remedial measures identified in paragraph 4 that have not already been implemented will be implemented within 30 days following the date of the execution of this Agreement (unless otherwise extended with the prior written approval of the Office); (b) it will maintain all policies, procedures and other remedial measures identified in paragraph 4 so long as this Agreement is in effect; and (c) it will retain all documentation generated in connection with the revised billing procedures so long as this Agreement is in effect.

<u>Continuing Obligation of Cooperation</u>

6.      PLAZA acknowledges and understands that its prior, ongoing and future cooperation is an important and material factor underlying the Office's decision to enter into this Agreement, and therefore PLAZA agrees to cooperate fully and actively with the Office and the Investigating Agencies regarding any matter about which the Office or the Investigating Agencies may inquire.

7. .    During the term of this Agreement, PLAZA agrees that its continuing cooperation shall include, but not be limited to, the following:

(a)      completely and truthfully disclosing all documents, materials or information in its possession about which the Office or the Investigating Agencies may inquire, including but not limited to all information about PLAZA's activities and those of its officers, employees and agents;

7

(b)     assembling, organizing and providing all documents, records and

other evidence in its possession, custody or control, wherever located, as reasonably may be

requested by the Office or the Investigating Agencies;

(c)     proactively disclosing to the Office all information concerning any

criminal wrongdoing or suspected criminal wrongdoing of any kind, which has not yet been

disclosed to the Office, and which is either currently in PLAZA's possession or which may come

into its possession in the future, including conduct of the type alleged in the Information;

(d)     using its reasonable best efforts to make available its present and

former directors, officers, employees and agents to provide information and/or testimony as

requested by the Office and/or the Investigating Agencies, including sworn testimony before a

grand jury or in court proceedings, as well as interviews with law enforcement authorities.

Cooperation under this paragraph shall include identification of witnesses who, to the knowledge

of PLAZA, may have material information regarding the Unlawful Conduct, and providing

records which may contain material information regarding the Unlawful Conduct;

(e)     providing testimony or information necessary to identify or

establish the original location, authenticity, or other basis for admission into evidence of

documents or physical evidence in any criminal or other proceeding as requested by the Office;

(f)     with respect to any information, testimony, documents, records or

physical evidence provided by PLAZA, consenting to any and all disclosures of such materials to

the Office and the Investigating Agencies as the Office, in its sole discretion, deems appropriate.

With respect to any such materials that constitute "matters occurring before the grand jury"

within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure, PLAZA further

8

consents to (i) any order sought by the Office permitting such disclosures, and (ii) the Office's <u>ex parte</u> or <u>in camera</u> application for such orders; and

> (g)     providing active assistance, including assistance by PLAZA's counsel, in connection with any investigation, criminal prosecution, civil trial or other legal proceeding brought by the Office.

8.     PLAZA agrees that it will continue to fulfill the cooperation obligations set forth in paragraph 7 above in connection with any investigation, criminal prosecution and/or civil proceeding brought by the Office relating to or arising out of the Unlawful Conduct set forth in the Information. PLAZA's obligation to cooperate is not intended to apply in the event that it is charged as a defendant in a criminal or civil proceeding. Notwithstanding the foregoing, PLAZA does not waive any privilege it may have with respect to any documents now or hereafter subject to the attorney-client privilege, the attorney work-product doctrine or other recognized legal privilege, and nothing herein is intended to be, or is, a request for PLAZA to waive any such privilege.

<u>Payment of Restitution</u>

9.     In addition to any payments required in connection with any current or future non-criminal proceedings by agencies not party to this Agreement or by branches of the Department of Justice other than the Office, PLAZA agrees to make restitution as set forth below to the victims of the scheme, generally described as "Clients" in the Information. PLAZA will make an offer of restitution to each of the victims in the amounts agreed to by the parties and cumulatively totaling two million, two hundred and twenty-six thousand, two hundred and seventy dollars and nineteen cents ($2,226,270.19). To the extent that PLAZA has already made restitution payments, those payments will be deducted from the offers of restitution to be made.

9

(a)     Within 30 days of the date of execution of this Agreement, PLAZA will contact each victim that is eligible for restitution via letter, the contents of which must be approved by the Office. PLAZA will advise each victim that restitution is available in the amount agreed to by the parties.

(b)     To the extent that any victim declines to claim the offered restitution within 12 months of the date of execution of this Agreement, PLAZA will be absolved of this Agreement's requirement to pay such restitution.

<u>Payment of a Financial Penalty to the United States</u>

10.     In addition to any payments required in connection with any current or future non-criminal proceedings by agencies not party to this Agreement or by branches of the Department of Justice other than the Office, and in addition to the restitution obligation set forth in paragraph 9, above, PLAZA agrees to pay of the sum of five million, six hundred and nineteen thousand, two hundred and sixty-nine dollars and ninety-two cents ($5,619,269.92) as a financial penalty as directed by the Office. PLAZA agrees to pay the penalty according to the following schedule: a three million dollar ($3,000,000) payment within 90 days of the date of the execution of this Agreement; a two million dollar ($2,000,000) payment within one year of the date of the execution of this Agreement; and the remaining balance within two years of the execution of this Agreement.

11.     PLAZA agrees that it will not, in connection with the financial penalty described in paragraph 10, above, seek, obtain or accept any reimbursement or other payments or credits from any insurer of PLAZA or any insurer of its divisions or subsidiaries. PLAZA also agrees that it will not seek, obtain or accept any tax deduction in connection with the financial penalty described in paragraph 10.

10

## Forfeiture

12. PLAZA acknowledges that it has obtained property that is subject to forfeiture as a result of its violation of Title 18, United States Code, Section 1349. PLAZA agrees to forfeit to the United States the sum of one million, three hundred and fifty-thousand, three hundred and seventeen dollars and forty-three cents ($1,350,317.43) (the "Forfeited Funds") and that the Forfeited Funds represent property, real or personal, constituting or derived, directly or indirectly, from proceeds traceable to PLAZA's violation of Title 18, United States Code, Section 1349.

13. Payment of the Forfeited Funds shall be made by certified or bank checks, payable to the "United States Marshals Service," with the criminal docket number noted on the face of the checks. PLAZA shall cause said checks to be sent by overnight mail to Assistant United States Attorney Brian D. Morris, United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201. The Forfeited Funds shall be paid in full within 7 days of the date of this agreement (the "Due Date"). In the event the Forfeited Funds are not fully paid on or before the Due Date, interest shall accrue on any unpaid portion thereof at the judgment rate of interest from that date. Further, if PLAZA fails to pay any portion of the Forfeited Funds on or before the Due Date, PLAZA consents to the forfeiture of any other PLAZA property up to the amount of the Forfeited Funds, pursuant to Title 18, United States Code, Section 982(b)(1), the Federal Debt Collection Procedures Act, or any other applicable law.

14. PLAZA hereby waives all interest in the Forfeited Funds in any administrative or judicial forfeiture proceeding, whether criminal or civil, and PLAZA agrees that the forfeiture may be accomplished either administratively or judicially at the Office's

election. If the Office elects to proceed judicially against the Forfeited Funds, the defendant

hereby consents to the entry of orders of forfeiture and waives the requirements of Rules 7, 11,

32.2, 41 and 43 of the Federal Rules of Criminal Procedure as they apply in any manner to any

forfeiture issue and, in order to effectuate the forfeiture of the Forfeited Funds, shall execute the

attached document entitled "Stipulation of Settlement and Decree of Forfeiture" (a copy of

which is attached hereto as Exhibit C). If the Office elects to proceed administratively, PLAZA

hereby consents to the entry of a declaration of forfeiture and waives the requirements of Title

18, United States Code, Section 983 regarding notice of seizures in non-judicial forfeiture

matters.

    15.    PLAZA agrees not to file a claim or petition or to assist any other person

or entity in filing a claim or petition, for remission of the Forfeited Funds in any administrative

of judicial proceedings. PLAZA voluntarily, knowingly and intelligently waives all

constitutional, legal, and equitable defenses to forfeiture of the Forfeited Funds. PLAZA further

agrees to waive all constitutional and statutory challenges in any manner (including direct

appeal, collateral attack, or any other means) to any forfeiture carried out in accordance with this

Agreement on any grounds, including that the forfeiture constitutes an excessive fine or

punishment.

    16.    The failure of the defendant to remit in full the Forfeited Funds on or

before the Due Date shall constitute a material breach of this agreement. In such a case, PLAZA

consents to the entrance of a civil money judgment on any unpaid balance of the Forfeited Funds

and to the payment of interest to accrue on said balance after the Due Date at the rate set forth in

Title 18, United States Code, Section 3612(f)(2).

12

### Deferral of Prosecution

17.     In consideration of PLAZA's remedial actions and its commitment to:
(a) accept and acknowledge responsibility for the Unlawful Conduct; (b) continue its cooperation
with the Office and the Investigating Agencies as described in paragraphs 6 through 8; (c) make
restitution available to victims as set forth in paragraph 9; (d) make the payment of a financial
penalty to the United States of America as set forth in paragraphs 10 and 11; (e) pay the
Forfeited Funds as described in paragraphs 12 through 16; (f) comply in the future with all
applicable laws, including federal, state and local criminal laws and construction contracting
laws and regulations; and (g) otherwise comply with all of the terms of this Agreement, the
Office shall, at the time it files the Information, simultaneously file a joint motion with PLAZA
pursuant to Title 18, United States Code, Section 3161(h)(2), to defer the prosecution of the
above-captioned case for a period of 24 months and to obtain an exclusion of time under the
Speedy Trial Act to allow PLAZA to demonstrate good conduct and compliance with the terms
of this Agreement.  By executing this Agreement and joining in said motion, PLAZA expressly
waives all rights to a speedy trial pursuant to the Sixth Amendment of the United States
Constitution, Title 18, United States Code, Sections 3161 et seq., Rule 48(b) of the Federal Rules
of Criminal Procedure, and any other applicable statutes or rules, including the Local Rules of
the United States District Court for the Eastern District of New York for the period during which
this Agreement is in effect.  This waiver in knowing, voluntary and in express reliance on the
advice of PLAZA's counsel.

18.     The Office agrees that, if PLAZA remains in compliance with all of its
obligations under this Agreement for the 24-month period identified in paragraph 17, this
Agreement shall expire and the Office will, within 30 days of the expiration of this Agreement,

13

move the Court pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the

Information with prejudice.  Except in the event of a breach of this Agreement, the Office will

bring no additional charges against PLAZA relating to or arising out of the Unlawful Conduct set

forth in the Information.

        19.    PLAZA understands and agrees that should the Office, in its sole

discretion, determine that PLAZA has deliberately given false, incomplete, or misleading

information under this Agreement, has otherwise deliberately violated any provisions of this

Agreement or has committed, or attempted to commit, any crime other than those set forth in the

Information, then PLAZA will be subject to prosecution for any crimes of which the Office has

knowledge and jurisdiction to prosecute, including prosecution relating to the Unlawful Conduct

set forth in the Information.  Any such prosecution may be premised on any information

provided by or on behalf of PLAZA to the Office or to the Investigating Agencies at any time.

Moreover, PLAZA agrees that any such prosecution relating to the allegations in the Information

that are not time-barred by the applicable statute of limitations as of the date of the execution of

this Agreement, including by reason of tolling agreement between the Office and PLAZA

entered into on February 6, 2014 and thereafter extended on January 22, 2015, June 10, 2015,

November 5, 2015, January 16, 2016 and June 13, 2016, may be commenced against PLAZA,

notwithstanding the expiration of any applicable statute of limitations between the date of the

execution of this Agreement and the expiration of this Agreement under paragraph 18, above.

By this Agreement, PLAZA expressly intends to and does waive any and all rights in this

respect.  This waiver is knowing, voluntary and in express reliance on the advice of PLAZA's

counsel.  Moreover, the commission of an additional crime by PLAZA shall constitute a breach

of this agreement.

20.     Furthermore, it is agreed that if the Office, in its sole discretion, determines that PLAZA has committed any crime or otherwise violated any provision of the Agreement:

(a)     this Agreement and the Information are admissible in any future court proceedings by the Office against PLAZA as an admission by PLAZA; all statements made by or on behalf of PLAZA or any of its directors, officers, employees and agents to the Office or the Investigating Agencies, including its admission that the facts set forth in the Information are true and accurate, and/or any testimony given by PLAZA or any of its directors, officers, employees and agents before a grand jury or elsewhere, whether before or after the date of execution of this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against PLAZA; and

(b)     PLAZA shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence or any other statute or federal rule that statements made by or on behalf of PLAZA before or after the date of execution of this Agreement, or any leads derived therefrom, should be suppressed. However, nothing in this Agreement shall constitute a waiver of any Confrontation Clause rights under the Sixth Amendment to the United States Constitution that PLAZA may have.

21.     PLAZA agrees that it shall not, through its attorneys, Board of Directors, directors, officers, employees and agents, make any public statement, in litigation or otherwise, contradicting the facts set forth in the Information, its admission that those facts established the elements of offenses charged in the Information, and its acceptance of responsibility for the acts

of its officers, directors and employees described in the Information. Any such contradictory statement by PLAZA, its present or future attorneys, directors, officers, employees and agents shall constitute a breach of this Agreement and PLAZA thereafter shall be subject to prosecution as specified in paragraphs 21 through 24. The decision as to whether any such contradictory statement will be imputed to PLAZA for the purpose of determining whether PLAZA has breached this Agreement shall be at the sole discretion of the Office. Upon receipt of notification by the Office of any such contradictory statement, PLAZA may avoid a finding of a breach of this Agreement by publicly repudiating such statement within 72 hours after receipt of notice by the Office. This paragraph shall not apply to any statement made by any current or former PLAZA director, officer or employee who is under investigation or has been charged with a crime or other wrongdoing by the Office or by any other federal, state or local agency.

22.    PLAZA agrees that the decision whether conduct or statements of any individual will be imputed to PLAZA for the purpose of determining whether PLAZA has knowingly, intentionally and materially violated any provision of this Agreement shall be in the sole discretion of the Office. If the Office determines that PLAZA has committed a knowing, intentional and material breach of any provision of this Agreement, the Office shall provide written notice of the alleged breach to PLAZA, through its counsel, Kenneth Breen, Esq., Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, or to any successor counsel that PLAZA may designate, and provide PLAZA with a two-week period from the date of receipt of such notice in which to make a presentation to the Office, or its designee, to demonstrate that no breach has occurred, or, to the extent applicable, that the breach was not knowing, intentional or material, or has been cured. Upon request by PLAZA, the Office may, in its sole discretion, agree in writing to extend this two-week period, including to provide PLAZA with an

16

opportunity to cure any breach of this Agreement.  The parties to this Agreement expressly understand and agree that if PLAZA fails to make a presentation to the Office, or its designee, within the two-week period (or other period agreed to by the Office), the Office may, in its sole discretion, conclusively presume that PLAZA is in knowing, intentional and material breach of this Agreement.  The parties further understand and agree that the exercise of discretion by the Office under this paragraph is not subject to review in any court or tribunal or any other office within the United States Department of Justice.

23.     Except to the extent permitted by the Office, PLAZA agrees that if, during the term of this Agreement, it sells or merges all or substantially all of its business operations as they exist as of the date of this Agreement to or into a single purchaser or a group of affiliated purchasers, PLAZA shall include in any contract for sale, plan of reorganization, or merger, a provision binding the purchaser/successor to PLAZA's obligations described in this Agreement, provided however that the obligations imposed by this Agreement will not extend to the governance and operation of a purchasing or investing entity that acquires some or all of PLAZA's stock, as long as that entity maintains PLAZA as a separate corporate entity.  The Office agrees that if a mortgagee that is wholly independent of PLAZA's current Board of Directors, officers, employees and shareholders takes ownership of PLAZA through foreclosure, the obligations imposed by this Agreement will not extend to that mortgagee.

24.     It is understood that this Agreement is binding on PLAZA and the Office, but specifically does not bind any other federal agencies, any state or local law enforcement agencies, or any licensing or regulatory authorities.  However, if requested by PLAZA or its attorneys, the Office will bring to the attention of any such agencies, including but not limited to any licensing authorities, and responsibility hearings or inquiries by any governmental body, this

17

Agreement, PLAZA's cooperation and its compliance with its obligations under this Agreement, and any reforms specified in this Agreement.  It is the intent of the parties to this Agreement that this Agreement does not confer or provide any benefits, privileges or rights to any individual or entity other than the parties hereto, and that this Agreement, including its attachments, shall be admissible in any proceeding brought by the Office.  Moreover, PLAZA may raise defenses or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not otherwise violate any term of this Agreement.

25.	Except as set forth herein, this Agreement in no way limits or affects any right, including right of inspection and/or enforcement, held by the United States or any other governmental body, pursuant to applicable federal, state, or local laws, regulations, or permits. In addition, nothing herein shall be read in any way to alter, affect, abrogate, or impair the ability and obligation of the United States to take any investigative or enforcement action for any future conduct, including but not limited to any administrative, civil, or criminal enforcement action, or to make any inquiry of PLAZA concerning any present or future alleged violation of federal law, regulation or order.

26.	The Office has concluded that deferring prosecution in this case is appropriate because deferral will likely meet all of the goals of prosecution.  This conclusion is based on PLAZA's cooperation and its acceptance of responsibility.

27.	PLAZA and the Office agree that, upon the filing of the Information in accordance with paragraphs 1 and 21, this Agreement (including its attachments) shall be publicly filed in the United States District Court for the Eastern District of New York.

18

28.    This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving PLAZA.

29.    This Agreement sets forth all the terms of the agreement between PLAZA and the Office.  No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, PLAZA's attorney, and a duly authorized representative of PLAZA.  This Agreement supersedes all prior promises, agreements or conditions between the parties, except for the tolling agreement between the Office and PLAZA entered into on February 6, 2014 and thereafter extended on January 22, 2015, June 10, 2015, November 5,

19

2015, January 16, 2016 and June 13, 2016. To become effective, this Agreement must be signed

by all signatories listed below. This Agreement may be signed in counterparts.

Dated:      Brooklyn, New York
            ~~September~~ 2016
            *October 13*

                              ROBERT L. CAPERS
                              United States Attorney
                              ~~Eastern District~~ of New York

            By:   _____
                  Whitman G.S. Knapp
                  Jonathan P. Lax
                  Assistant United States Attorneys

                  _____
                  Winston Paes
                  Chief, Business & Securities Fraud Section


                  Agreed and Consented to by:
                  PLAZA CONSTRUCTION LLC, successor to
                  PLAZA CONSTRUCTION CORP.

            By:   _____
                  Lester Rivells
                  Board-Designated Representative


                  Approved by:
                  PAUL HASTINGS LLP
                  Attorneys for PLAZA

            By:   _____
                  Kenneth M. Breen, Esq.
                  Paul Hastings LLP
                  200 Park Avenue
                  New York, New York 10166

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

EASTERN DISTRICT *of* NEW YORK

U.S. Attorneys » Eastern District of New York » News

### Department of Justice

U.S. Attorney's Office

Eastern District of New York

FOR IMMEDIATE RELEASE                                          Thursday, October 13, 2016

# Plaza Construction Charged With Fraud

## Will Pay More Than $9 Million In Restitution And Penalties For Defrauding Clients In A Thirteen-Year Overbilling Scheme

### *Projects Included the Empire State Building, Brooklyn Navy Yard, Bronx Terminal Market, Federal Reserve Bank of New York, and New York University*

Earlier today, the U.S. Attorney's Office for the Eastern District of New York (the Office) filed fraud charges in Brooklyn federal court against Plaza Construction LLC, successor to Plaza Construction Corp. (Plaza Construction), one of the largest construction firms in New York City. Plaza Construction is charged with mail and wire fraud conspiracy for improperly billing its clients more than $2.2 million over a thirteen-year period for hours not worked and for inserting a hidden surcharge into its bills for the purpose of obtaining payments to offset administrative costs. As a result, Plaza Construction has entered into a deferred prosecution agreement with the Office in which it admitted to fraudulently overbilling clients and agreed to pay more than $9 million in restitution to victims, and forfeiture and penalties to the federal government. The company has additionally instituted far-reaching corporate reforms designed to eliminate future problems and enforce best industry practices.

Today's deferred prosecution agreement marks the fourth resolution by the Office aimed at rooting out fraud in the construction industry. In April 2012, Lend Lease (US) Construction LMB Inc. (formerly Bovis Lend Lease LMB Inc.) was charged with defrauding its clients, entered into a deferred prosecution agreement, and paid $56 million in restitution and penalties for engaging in a ten-year overbilling scheme. In May 2015, Hunter Roberts Construction Group, LLC entered into a non-prosecution agreement and agreed to pay more than $7 million in restitution and penalties for engaging in an eight-year fraudulent overbilling scheme. In December 2015, Tishman Construction Corporation was charged with defrauding its clients, entered into a deferred prosecution agreement, and paid more than $20 million in restitution and penalties for engaging in a ten-year overbilling scheme.

The charges and disposition were announced by Robert L. Capers, United States Attorney for the Eastern District of New York; Michael Nestor, Inspector General, Port Authority of New York and New Jersey (PANYNJ); William F. Sweeney, Jr., Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office (FBI); Carol Fortine Ochoa, Inspector General, General Services Administration (GSA), Office of Inspector General; Scott S. Dahl, Inspector General, U.S. Department of Labor (DOL), Office of Inspector General; and Mark G. Peters, Commissioner, New York City Department of Investigation (DOI).

# RESOLUTION OF THE BOARD OF DIRECTORS OF

# PLAZA GROUP HOLDINGS, LLC

The undersigned, being the Directors of the Company, do hereby adopt, confirm and consent to the resolutions set forth below at a duly called and held meeting of the Board of Directors as of this date, October *13*, 2016:

WHEREAS, the Company has reviewed that certain Deferred Prosecution Agreement between the United States of America and Plaza Construction LLC (the "DPA"); and

WHEREAS, the Board of Directors of the Company hereby approves the terms and conditions of the DPA; and

WHEREAS, the DPA contemplates that Plaza Construction LLC waives its right to indictment by a grand jury and knowingly and voluntarily consents to proceeding by information as to the matter referred to in the DPA (the "Matter"); and

WHEREAS, the Company knowingly and voluntarily consents to Plaza Construction LLC consenting to such waiver of its right to indictment by a grand jury; and

WHEREAS, the Company is the sole member of Plaza Construction LLC; and

WHEREAS, Plaza Construction Corp. merged into Plaza Construction LLC on April 4, 2014; and

WHEREAS, the Company wishes to designate and appoint Lester E. Rivelis, Esq., the Chief Operating Officer and General Counsel of Plaza Construction LLC, and Kenneth M. Breen, Esq., a partner with the law firm of Paul Hastings LLP, as representatives for the Company ("Counsel") and authorize each of them to execute and deliver the DPA to the United States of America on behalf of Plaza Construction LLC;

NOW THEREFORE BE IT:

RESOLVED, that the DPA is hereby approved by the Board of Directors; and be it

RESOLVED FURTHER, that Counsel shall be and are hereby authorized, empowered and directed to execute and deliver the DPA to the United States of America on behalf of Plaza Construction LLC, to appear before the United States District Court for the Eastern District of New York and to waive on Plaza Construction LLC's behalf its right to indictment by a grand jury as to the Matter, and to execute any and all documents and notices to be delivered by Plaza Construction LLC or the Company under or in connection with the DPA; and be it

RESOLVED FURTHER, that Counsel is authorized to represent and affirm before the United States District Court for the Eastern District of New York that Plaza Construction LLC's

waiver of its right to indictment by a grand jury and consent to proceed by information in the Matter is knowing and voluntary; and be it

RESOLVED FURTHER, that Counsel, as well as any officer of the Company and Plaza Construction LLC, are hereby authorized, empowered and directed to take whatever actions they deem necessary on the Company's behalf in order to secure the acceptance of the DPA by the United States District Court for the Eastern District of New York; and be it

RESOLVED FURTHER, that the Company is hereby authorized to perform its obligations arising from the DPA; and be it

RESOLVED FURTHER, the Board of Directors acknowledge that all actions taken and expenses incurred by Counsel and any director or officer of Plaza Construction LLC or the Company heretofore in furtherance of any actions authorized by the foregoing resolutions hereby are expressly ratified, confirmed, adopted and approved in all respects, and the Board of Directors acknowledges that the resolutions contained herein may supersede prior resolutions adopted by the Board of Directors to the extent such resolutions are inconsistent with the actions taken herein.

IN WITNESS WHEREOF, the undersigned directors have executed this consent, to be effective as of October 13, 2016.

_____
RICHARD WOOD

_____
LINSEN ZHANG

_____
JINGTAO YANG

_____
LESTER RIVELIS

_____
BRAD MELTZER

IN WITNESS WHEREOF, the undersigned directors have executed this consent, to be effective as of October 13, 2016.

_____
RICHARD WOOD

_____
LINSEN ZHANG

_____
JINGTAO YANG

_____
LESTER RIVELIS

_____
BRAD MELTZER

**BUDD LARNER**

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

150 JOHN F. KENNEDY PARKWAY
SHORT HILLS, NJ 07078-2703
973.379.4800
FAX 973.379.7734
www.buddlarner.com

**DOMINICK BRATTI, ESQ.**
WRITER'S DIRECT DIAL: (973) 315-4491
WRITER'S DIRECT E-MAIL: dbratti@buddlarner.com

January 25, 2018

<u>**Via Electronic Mail**</u>

Karl Meinert
Allied Digestive Health
60 Route 36, Suite B
West Long Branch, NJ 07764

Re:     **Standard Employment Policies**

Dear Mr. Meinert:

As we discussed, this will summarize standard / best practices with respect to the administration of employee policies and procedures.

1.     <u>Maintain Uniform Policies and Procedures</u>

It is imperative that the Practice have uniform employment policies and procedures at all of its locations and that the policies and procedures are uniformly applied. Non-uniformity in policies and/or their application increases both the risk of discrimination based litigation and the likelihood of an adverse result in the event of such litigation.  State and federal anti-discrimination laws confer "protected status" upon most members of the workforce.  As a result, such things as differences in pay, benefits or discipline of similarly situated employees can easily provide the basis for a discrimination claim.  For example, if an equally qualified man and woman performing the same job are being paid differently or are receiving different benefits, the disadvantaged employee would have a prima facie claim of discrimination.  The same would be true where the employee being disadvantaged fell into any one of a myriad of other protected classifications based on such things as age, race, religion, creed, national origin, marital status, sexual orientation,  disability, blood type.  State and federal law also protects employees who have filed workers compensation or wage and hour claims as well as employees who can be classified as whistleblowers due to other complaints they may have made during the course of their employment.  In short, a Plaintiff's attorney can almost always find a way to assert a claim on behalf of an employee who is treated differently from his or her co-workers.

Moreover, even frivolous lawsuits are expensive to defend. As a result, the Practice must make a significant effort to ensure that its employment policies are uniform and are uniformly applied. This means that benefits and rates of pay / salary ranges should be uniform throughout the Practice and that such things as discretionary bonuses should be based upon clear, objective and documented criteria. Where two similarly situated employees receive wildly different holiday bonuses for example, red flags are bound to be raised.

The following recommendations are designed to minimize the risk of complaints / litigation by insuring that policies are uniformly applied and that any discrepancies are based upon legitimate factors and are properly documented.

## 2. Centralized Human Resources Department

In order to insure that employee policies and procedures are uniform and are uniformly applied, it is best for the Practice to have a centralized Human Resources Department through which policies are developed and implemented. This is particularly important when the Practice has multiple locations and/or has grown (or anticipates growing) through merger / acquisition. In such cases, individual locations may be operating differently as a result of past practices / prior management. Even where individual sites are given some autonomy in managing employees, it is a good idea to insure that policies and decisions are coordinated through the Practice's central Human Resources Department.

## 3. Employee Handbook / Training

As a general rule, employee policies should be communicated to all of the employees and available for review. Although the Handbook need not set forth every policy or cover every situation, it is a good idea to make sure that important policies and procedures are communicated to all employees. Allied's Employee Handbook does this and is consistent with a centralized Human Resources Department. As a result, both employees and management personnel should receive periodic training to ensure that the policies and procedures are well known and are being followed.

This training can be combined with Anti-Harassment / Diversity Training. Importantly, Anti-Harassment training also provides the employer with an affirmative defense to certain types of discrimination claims when it is combined with an effective grievance / discipline of procedure.

## 4. Properly Document Legitimate Discrepancies

In situations where management believes that there is a legitimate business reason for treating apparently similarly situated employees differently with respect to compensation and /or other terms and conditions of employment, it is important that Human Resources be consulted in advance and that the reasons for any decision resulting in a discrepancy be well documented. A long-term employee with a good performance record might well deserve a better severance package than a short-term problematic employee even where both employees are terminated at the same time (for example due to a reduction in force). However, where such decisions are made at the site level, discrepancies between how different the sites addressed the issue may not

be easily explained.    This leaves the door open for a plaintiff's attorney to argue that the disparate impact upon his client was ill motivated or discriminatory. As a result, decisions of this type must be made or approved by upper management or the Human Recourses Department. This will help ensure that decisions are consistent throughout the practice over time.   It will also help ensure that the basis for any discrepancies in the treatment of individual employees or in the administration of policies / procedures is well documented.

5.    Grievance / Complaint Procedure

The Practice should have a grievance / complaint procedure in place through which employees may raise issues and concerns.    Some employers have very formal grievance procedures similar to those contained in collective bargaining agreements and which may require that certain types of disputes ( for example, those involving major discipline / discharge) be resolved through arbitration.   Depending on the terms and conditions of the particular policy, it may be necessary for the employee to sign off on the policy.

Once again, Allied already has a grievance procedure in place.   As a result, the focus of the Practice should be ensuring that the procedure is well known and that it is followed consistently.

6.    Individual Employment Contracts Should Be Periodically Reviewed

Where the terms and conditions of an individual's employment are governed by an employment contract, the Practice should periodically review the agreement to make sure that it still accurately reflects the intent of the parties.   Individual contracts should also incorporate the above suggestions.

Please let me know if you have any questions.

Very truly yours,

DOMINICK BRATTI

DB/eb

WMP:WK/JPL
F. #2011R02049

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N F O R M A T I O N |
| - against - | Cr. No. 16-532 (NGG)<br>(T. 18, U.S.C., §§ 981(a)(1)(C), 1349 and<br>3551 et seq.; T. 21, U.S.C., § 853(p); T. 28,<br>U.S.C., § 2461(c)) |
| PLAZA CONSTRUCTION LLC,<br>successor to PLAZA<br>CONSTRUCTION CORP., | |
| Defendant. | |

– – – – – – – – – – – – – – – – – X

THE UNITED STATES ATTORNEY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Information, unless otherwise indicated:

I.      <u>The Defendant</u>

1.      PLAZA CONSTRUCTION LLC, successor to PLAZA

CONSTRUCTION CORP. (collectively, "PLAZA"), was a New York-based construction

service corporation that provided construction, project management and consulting services on

large-scale publicly and privately funded construction projects.  PLAZA was acquired in April

2014 by a subsidiary of a large construction and real estate conglomerate.

2.      PLAZA was one of the largest construction firms in New York.  In 2011,

PLAZA had more than 200 employees, the majority of which worked in its New York, New

York office.  PLAZA provided construction services on numerous New York City projects,

including: (i) the Brooklyn Navy Yard; (ii) the Bronx Terminal Market; (iii) the Federal Reserve

Bank of New York; (iv) New York University; and (v) the Empire State Building.

II.   PLAZA's Construction Contracts

3.   PLAZA's role on construction projects was typically that of a construction manager.  This often required PLAZA to supervise the work done by subcontractors or trade contractors.  As construction manager, PLAZA usually executed a construction management agreement, which governed the "general conditions" costs, such as: (i) the cost of supplying workers from the Mason Tenders' District Council of Greater New York ("Local 79"), including its labor foremen and laborers (the "Labor Foremen" and "Laborers"); (ii) the cost of supplying workers from certain other trade unions, including the International Brotherhood of Teamsters ("Local 282") and International Union of Operating Engineers ("Locals 14/15") (collectively, with Labor Foremen and Laborers, the "General Conditions Union Workers"); and (iii) the cost of staffing the project with, among other PLAZA employees, project executives, project managers, superintendents, estimators, schedulers and accountants (the "General Conditions Staff Employees").

4.   The pay rates for PLAZA's General Conditions Union Workers were defined by collective bargaining agreements, negotiated and entered into with the Contractors' Association of Greater New York ("CAGNY").  These agreements (the "CAGNY Agreements") governed the wage and fringe benefit rates of the General Conditions Union Workers, and also provided that the Labor Foremen were not to be paid on sick days, vacation days and unworked holidays.

5.   The terms of construction management agreements between PLAZA and its clients (the "Client Contracts"), among other things: (i) required PLAZA to bill its clients for work actually performed by the General Conditions Union Workers; and (ii) prohibited PLAZA

from billing to its clients general expenses, administrative costs and overhead associated with PLAZA's home office operations (collectively, the "Administrative Costs").

III.   PLAZA's Fraudulent Scheme

6.      From approximately January 1999 through February 2012, PLAZA, together with others, devised a scheme to defraud federal, state and local government contracting and funding agencies, as well as private clients (collectively, the "Clients"), by making false representations, and material misstatements and omissions, in billing requisitions submitted by PLAZA to its Clients. Some of these materially misleading statements and omissions were sent and delivered by interstate emails and by the United States Postal Service and private and commercial interstate carriers.

7.      In furtherance of the fraudulent scheme, beginning in approximately August 2004 and ending in approximately February 2012, PLAZA instituted a systemic practice of inserting a hidden surcharge (the "Administrative Fee") into its bills to Clients for the purpose of obtaining payments to offset Administrative Costs. Specifically, PLAZA fraudulently inflated the fringe benefits costs for General Conditions Union Workers and General Conditions Staff Employees by as much as three percent (3%) of gross wages. PLAZA did not disclose to its Clients the existence of the Administrative Fee and retained the Administrative Fee charges as additional revenue. At various times during the relevant period, however, PLAZA lowered the Administrative Fee that it was secretly levying upon its Clients to contend with changing economic conditions and PLAZA's desire to increase its competitiveness in the marketplace. In sum, PLAZA fraudulently billed its Clients approximately $1,350,317.43 in Administrative Fees.

8.      In furtherance of the fraudulent scheme, from at least 1999 until approximately August 2005, PLAZA paid between five and seven hours of unworked or

unnecessary "guaranteed" overtime per day to one of its General Labor Foreman (the "General Foreman"), an individual whose identity is known to the United States Attorney. PLAZA, in turn, billed its Clients for these hours whether or not the General Foreman had actually worked them.

9.    As a further part of the fraudulent overbilling scheme, from at least January 1999 until approximately 2009, PLAZA provided unworked holiday pay to Labor Foremen, allowing them to be absent from work for major holidays while PLAZA completed and submitted time sheets to its Clients as though the Labor Foremen had worked those days or had been entitled to such pay when, in fact, as PLAZA knew, they had not. Additionally, during the same time period, PLAZA: (i) occasionally added one or two hours of unworked or unnecessary "guaranteed" overtime per day, whether worked or not, for two Labor Foremen, individuals whose identities are known to the United States Attorney; and (ii) allowed these two Labor Foremen to be absent from work for certain vacation days, while PLAZA completed and submitted time sheets to its Clients as though the two Labor Foremen had worked those days.

10.    PLAZA did not disclose to its clients that PLAZA was billing the Clients for hours not actually worked or not necessary. In sum, PLAZA improperly billed its Clients approximately $875,952.76 in connection with PLAZA's fraudulent overbilling scheme.

## CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD

11.     The allegations contained in paragraphs one through 10 are realleged and incorporated as if fully set forth in this paragraph.

12.     In or about and between January 1999 and February 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PLAZA CONSTRUCTION LLC, successor to PLAZA CONSTRUCTION CORP., together with others, did knowingly and intentionally conspire:

(a)     to devise a scheme and artifice to defraud its Clients, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause to be delivered matter and things by the United States Postal Service, and other private and commercial interstate carriers, according to the direction thereon, contrary to Title 18, United States Code, Section 1341; and

(b)     to devise a scheme and artifice to defraud its Clients, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

13.     The United States hereby gives notice to the defendant that, upon its conviction of the above-charged offense, the government will seek forfeiture in accordance with

Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), which requires any person convicted of such offense to forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1349.

14.     If, by any act or omission of the defendant, any of the above-described property, or any portion thereof;

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred, or sold to or deposited with a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

WMP:WK/JPL
F. #2011R02049

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ONE MILLION THREE HUNDRED
FIFTY THOUSAND, THREE
HUNDRED SEVENTEEN DOLLARS
AND FORTY-THREE CENTS, IN
UNITED STATES CURRENCY,

              Defendant.

- - - - - - - - - - - - - - - -X

STIPULATION OF SETTLEMENT
AND DECREE OF FORFEITURE

Case No.

WHEREAS, on or about October $\underline{13}$, 2016, the United States of America,

by the United States Attorney's Office for the Eastern District of New York (the "United

States"), and Plaza Construction, LLC, successor to Plaza Construction Corp. (collectively,

"PLAZA"), by its undersigned Designated Representative, pursuant to a duly authorized

Board of Directors resolution, and by its undersigned attorney, Kenneth M. Breen, entered

into a deferred prosecution agreement ("the "Agreement") whereby the United States agreed

to defer prosecution of PLAZA in connection with a conspiracy to commit mail fraud and

wire fraud charged in an Information filed with the United States District Court for the

Eastern District of New York, United States v. Plaza Construction LLC, successor to Plaza

Construction Corp., Criminal Docket No. $\underline{16-532 \ (NGG)}$;

WHEREAS, as part of its obligations under the Agreement, PLAZA has

agreed to, inter alia, forfeit the sum of one million, three hundred fifty thousand, three

2

hundred seventeen dollars and forty-three cents ($1,350,317.43) in United States currency

(the "Forfeited Funds"), as representing proceeds of the conspiracy to commit mail fraud and

wire fraud;

WHEREAS, PLAZA has agreed to waive the filing of a civil forfeiture

complaint as to the Forfeited Funds in accordance with the procedures set forth in 18 U.S.C.

§ 983; and

WHEREAS, the United States and PLAZA desire to resolve this matter upon

the below mutually agreeable terms and conditions.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and

between the undersigned parties as follows:

1.      The undersigned Designated Representative, and the undersigned

attorney represent that they are authorized to enter into this Stipulation of Settlement and

Decree of Forfeiture and to execute this and all other documents necessary to effectuate the

settlement of this action on behalf of PLAZA.

2.      Upon entry of this Stipulation of Settlement and Decree of Forfeiture,

PLAZA hereby consents to the forfeiture of the Forfeited Funds to the United States

pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as property, real or personal,

which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1349,

and/or as a substitute res for such property.

3.      PLAZA shall tender in full the Forfeited Funds to the United States

within seven (7) days of the date of the Agreement, by certified or bank check, payable to

the "United States Marshals Service."  Said check shall be delivered to Assistant United

States Attorney Brian D. Morris, United States Attorney's Office, Eastern District of New

3

York, 271-A Plaza East, 7th Floor, Brooklyn, New York 11201, by hand or express, overnight delivery. PLAZA agrees that this payment does not constitute a fine, penalty, or payment of taxes.

4.    In connection with the forfeiture set forth in Paragraph 2, above, PLAZA agrees to release, remise and forever discharge plaintiff, the United States of America and it agencies, agents, officers, and employees, past and present, from all claims or causes of action which PLAZA and its agents, assigns, representatives, and successors ever had, now have, or hereafter may have against the plaintiff and its agencies, agents, officers, and employees, past and present, for or on account of the commencement of this action, the settlement of this action, and the seizure and forfeiture of the Forfeited Funds.

5.    PLAZA waives its right, if any, to use the instant action or its settlement as a basis for any statutory or constitutional defense in any other civil, criminal or administrative action, including, without limitation, venue, defenses based upon the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eight Amendment to the Constitution.

6.    The parties agree that each party shall bear its own costs and attorney's fees, and PLAZA further agrees to waive any and all rights it has, if any, to recover attorney's fees and/or interest under the Equal Access to Justice Act, the Civil Asset Forfeiture Reform Act, or any other legal or statutory authority with respect to the forfeiture of the Forfeited Funds.

7.    The United States will publish notice of this seizure and of its intent to forfeit the Forfeited Funds on the government's official website, www.forfeiture.gov, consistent with the custom and practice in this judicial district.

4

8.      Upon completion of publication and provided that no third party claims are filed with respect to the Forfeited Funds, the Forfeited Funds shall be forfeited to the United States.

9.      At that time, the Federal Bureau of Investigation, and it duly authorized agents and/or contractors shall be authorized to dispose of the Forfeited Funds in accordance with all laws and regulations.

10.     The District Court shall retain jurisdiction of this action to enforce the terms of this Stipulation of Settlement and Decree of Forfeiture.

11.     This Stipulation of Settlement and Decree of Forfeiture sets forth the entire, final agreement of the parties and may not be modified orally.

12.     The Clerk of the Court shall forward four (4) certified copies of this Stipulation of Settlement and Decree of Forfeiture to FSA Senior Law Clerk William K. Helwagen, Esq., and then is directed to close this case.

Dated:  Brooklyn, New York
        _October 13,_ 2016

                                ROBERT L. CAPERS
                                United States Attorney
                                Eastern District of New York
                                *Attorney for United States*
                                271-A Cadman Plaza East
                                Brooklyn, New York 11201

        By:     _____
                Brian D. Morris
                Assistant United States Attorney
                (718) 254-6512

5

Dated:  New York, New York
~~September~~, 2016
OCTOBER  13

Kenneth M. Breen, Esq.
Paul Hastings, LLP
200 Park Avenue
New York, New York 10166

By:   _Kenneth Breen_
Kenneth M. Breen, Esq.
(212) 318-6344

AGREED AND CONSENTED TO:

Dated:  New York, New York
_October 13_, 2016

_Lester Rivelis_
Lester Rivelis
Board-Designated Representative

On the _13th_ day of _October_, in the year of 2016, _LESTER Rivelis_, known to me, the undersigned or provided to me on the basis of satisfactory evidence to be the individual whose name is subscribed to above, personally appeared before and acknowledged to me that he executed the foregoing document.

_Melissa Corbo_
Notary Public

MELISSA CORBO
Notary Public, State of New York
No. 01CO4859124
Qualified in New York County
Commission Expires: July 16, _20 16_

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

_____
Dated: