# Sadowski Katz LLP

830 Third Avenue, 5th Floor
New York, New York 10022
Phone: 646-503-5341

Fax: 646-503-5348
rsadowski@sadowskikatz.com
rkatz@sadowskikatz.com

April 11, 2018

*Via ECF*

Hon. Lorna G. Schofield
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States of America ex rel. Brian Aryai v. Skanska et al.,*
              09 Civ. 5456 (S.D.N.Y.

Dear Judge Schofield:

      We represent Brian Aryai ("Relator"), in the above-referenced *qui tam* action filed under seal pursuant to the Federal False Claims Act ("FCA"). We write in response to the Defendants' pre-motion letters setting forth the bases for their anticipated motions to dismiss the Amended Complaint. We also write setting out Relator's bases for a cross-motion for summary judgment as to Defendants Plaza Construction and Tishman Construction Corporation, which have both admitted the essential material elements to a civil FCA claim in the papers resolving their criminal prosecutions.

### A. Defendants' Proposed Motions to Dismiss Under Fed. R. Civ. P. 9(b) and the Public Disclosure Bar Are Meritless

      Defendants' motions to dismiss are expected to be based on Fed. R. Civ. P. 9(b), which requires claims sounding in fraud, such as claims under the FCA, to be pled with particularity. In response to Defendants' pre-motion letters, the Relator is today filing a Second Amended Complaint ("SAC"), which renders Defendants' Rule 9(b) arguments moot. As alleged in the SAC, each of the Defendants' governmentally-funded construction projects are set forth in Exhibits A through E. These Exhibits set forth the identity of the governmentally-funded project, its location, the period Defendants were engaged to work on the project and the agency

1

responsible for funding the projects. *See* SAC ¶¶ 13-16 & 22, Exs. A-E. The SAC also identifies the projects the Joint Venture Defendants were engaged in constructing. *Id.* ¶¶ 18-21.

The SAC identifies the Unions which conspired with the Defendants in the gratis pay scheme: Local 14-14B (Operating Engineers); Local 79 (Mason Tenders); Local 1536 (Carpenters and Joiners). *Id.* ¶¶ 28-30. The SAC identifies the fringe benefits received by the Unions for falsely reported gratis pay. *Id.* ¶ 27.

The SAC recounts with particularity the fraudulent scheme and establishes Relator as an "original source" and thus exempt from the FCA's public disclosure bar. Relator became a Senior Vice President of Bovis Lend Lease in April 2008. *Id.* ¶ 31. In his role as Controller, Relator had primary oversight authority over certified payroll. *Id.* ¶ 38. The SAC describes the certified payroll records that Defendants were required to submit, and which are the false claims at the heart of this FCA case. *Id.* ¶¶ 32-34. The SAC provides that the certified payrolls are reports that are required in requisitions for payment. *Id.* ¶ 32. The certified payrolls report the base rate of pay per hour, which purpose is to show prevailing wages were paid for the type of labor involved, and certifies that the hours were worked. *Id.* This information is material to the governmental entity funding the construction project because all governmentally funded projects require prevailing wages to be paid and a certification of the hours worked. The certified payroll record identifies the name, address and the last four digits of the social security number of the laborer. *Id.* ¶ 33. The certified payroll records identify the trade and classification of each worker, the hours the laborer worked, the rate of pay earned by the laborer, as well as the supplemental benefits paid to an identified Union, with its address, contract registration number, job code, pay period, project name, location, and the identity of the responsible funding agency. *Id.* Importantly, the certified payroll records have a certification signed by an authorized officer that the payroll record is correct, with an acknowledgement that falsification of the statement is a punishable offense. *Id.* ¶ 34.

Relator, having discovered, investigated, and confirmed the practice of "gratis pay," confronted company executives at Bovis Lend Lease ("BLL"). *Id.* ¶ 35. BLL company executives, many of whom had worked for other large construction companies in New York, confirmed that "gratis pay" was a long-standard standard industry practice in the New York metropolitan area. *Id.* Relator identifies two BLL Senior Executives who specifically admitted to Relator that the gratis pay practice was in place due to a silent agreement between the Unions and the named Defendants. *Id.* ¶ 39. Relator interviewed tradesmen, who corroborated the fraud. During those interviews Relator showed foremen and others who were fraudulently paid copies of certified payroll; they admitted the scheme was standard procedure. *Id.* ¶¶ 40-41.

The SAC particularizes Relator's investigation. In October 2008, Relator personally visited the World Trade Center Transit Hub construction site. *Id.* ¶¶ 41. He reviewed certified payrolls, interviewed foremen, and surveilled the site, confirming that the scheme was in operation at the site. *Id.* Relator then met with an identified fellow BLL Senior Vice President,

who confirmed to Relator that the Joint Venturers at the Transit Hub paid all foremen gratis pay, regardless of which member of the Joint Venture put and paid the foremen at the site. *Id.* The members of the Joint Venture at the Transit Hub were Defendant Skanska, as well as BLL, Flour Enterprises, and Granite Northeast. *Id.*

The SAC sets forth how Relator attempted to stop the gratis pay scheme and how the Managing Director and Payroll Manager at BLL's New York office devised a scheme to thwart Relator's efforts to curtail the scheme and to continue the fraudulent billing. *Id.* ¶ 42. Relator was terminated in retaliation for his efforts. Prior to his termination, however, Relator reached out to his counterpart Senior Executives at Defendant Plaza Construction and former CFO of Tishman Construction and a Skanska executive, whom the SAC identifies, and who confirmed the Defendant companies' involvement in the gratis pay scheme, and who warned Relator to not pursue his questions about the scheme. *Id.* ¶¶ 44.

The SAC alleges that on February 6, 2009, Relator personally and voluntarily provided the report of his investigation of the gratis pay scheme to former United States Attorney for the Eastern District of New York Loretta Lynch, who then personally oversaw the criminal investigations of at least four Defendants. *Id.* ¶ 45. The SAC names four high ranking BLL executives, who all acknowledged the gratis pay scheme was a decades-old practice amongst all major construction companies in the New York metropolitan area. *Id.* ¶¶ 46-49.

In June 2010, relator met with United States Attorney Lynch near her office at Cadman Plaza, Brooklyn. *Id.* ¶ 50. During this meeting, Relator and Lynch discussed the progress of the investigation, at which time, Lynch confirmed Relator's investigative finding that the gratis pay overtime fraud was indeed an industry-wide practice. *Id.* In fact, Lynch told Relator that the fraud was so pervasive among the companies referred for prosecution that the prosecution and roll-out of indictments would be staggered over several years. *Id.* During the same conversation, Relator and Lynch commented that the United States Courthouse in Brooklyn and U.S. Attorney's were renovated in a major construction project infected with the gratis pay scheme. *Id.*

The second basis for Defendants' motions to dismiss is that the Relator claims are barred by public disclosure. Relator, however, is an "original source," which excepts Mr. Aryai from the public disclosure bar. As stated above and in the SAC, Relator has "direct and independent knowledge" of the gratis pay scheme. Defendants assert that Relator may not rely on the Deferred Prosecution Agreements. The criminal prosecution of the Defendants, however, would not have been undertaken without Relator coming forth voluntarily to expose the scheme and thus caused the prosecution, which only confirmed that Relator's information was correct, in depth, and that Defendants sought to actively conceal it.

**B. Relator's Proposed Cross Motion for Summary Judgment as to Defendants Plaza Construction LLC, successor to Plaza Construction Corp., and Tishman Construction Corporation Is Ripe**

As to the Defendants Plaza Construction LLC ("Plaza") and Tishman Construction Corporation ("Tishman"), who have admitted liability relating to the gratis pay scheme in the DPAs they have entered, they are estopped from denying liability, and the only issue is the quantification of damages and penalties. 31 U.S.C. § 3730(c)(5) ("[A] finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review."). "Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730." 31 U.S.C. § 3731(e). "When an issue is resolved in favor of the United States in a criminal prosecution, that issue may not be contested by the same defendant in a subsequent civil suit . . ." *United States v. Walcott,* 972 F.2d 323, 327 (11th Cir. 1992); *United States v. Killough*, 848 F.2d 1523, 1528 (11th Cir. 1988). *See also United States ex rel. Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,* 299 F. Supp. 2d 483, 486 (D. V.I. 2004).

With respect to Plaza, on November 9, 2016, Plaza, pursuant to a Board of Directors Resolution, and the United States Attorney's Office for the Eastern District of New York entered into a Deferred Prosecution Agreement ("DPA"). In an Information attached to the DPA as Exhibit B, the United States charged Plaza with conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349. According to the DPA, "[b]y executing this [DPA], PLAZA waives any and all rights it has to have the crimes charged in the Information presented to a grand jury and prosecuted by indictment and waives any and all objections to venue and applicable statutes of limitations." SAC Ex. H at 2 ¶ 1. Further pursuant to the DPA, "PLAZA **accepts and acknowledges as true the facts set forth in the Information**, which is incorporated herein by reference." *Id.* at ¶ 2 (emphasis added). As part of the DPA, PLAZA was required to undertake affirmative actions to verify the accuracy of union worker's time sheets. *Id.* at 4 ¶ 4(f). PLAZA further agreed to pay restitution, penalties, and forfeiture. *Id.* at 8-11. Further, in the DPA, "PLAZA agrees that it shall not, through its attorneys, Board of Directors, directors, officers, employees and agents, make any public statement, in litigation or otherwise, contradicting the facts set forth in the Information, and its acceptance of responsibility for the acts of its officers, directors and employees described in the Information. *Id.* at 14-15 ¶ 21.

According to the Information, which PLAZA acknowledges as true, from "January 1999 through February 2012, PLAZA, together with others, devised a scheme to defraud federal, state and local government contracting and funding agencies . . ., by making false representations, and material misstatements and omissions, in billing requisitions submitted by PLAZA . . ." SAC Ex. H (Information at 3 ¶ 6). The Information states, "[i]n furtherance of the fraudulent scheme,

4

from at least 1999 until approximately August 2005, PLAZA paid between five and seven hours of unworked or unnecessary 'guaranteed' overtime per day to one of its General Labor Foreman . . . PLAZA, in turn, billed its Clients for these hours whether or not the General Foreman had actually worked them." *Id.* at 3-4 ¶ 8.

With respect to Tishman, The DPA, which it entered with the United States Attorney's office reads substantively identical to the Plaza DPA in all of its material terms. *See* SAC, Ex. G. As to the Information against Tishman, it too reads substantively identical to the Plaza Information in all of its material terms. *See id.*

Respectfully submitted,

By: s/ Robert W. Sadowski

Robert W. Sadowski
Raphael Katz
Sadowski Katz LLP
830 Third Avenue, 5th Floor
New York, New York 10022
Tel. No.: (646) 503-5341
rsadowski@sadowskikatz.com
rkatz@sadowskikatz.com


Joseph G. Sconzo, Esq.*
PGA Financial Plaza
3399 PGA Boulevard, Suite 180
Palm Beach Gardens, FL 33410
josephsconzolaw@gmail.com

Joshua L. Weiner, Esq.**
BUDD LARNER, PC
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
Tel.:   973-379-4800
Fax.:  973-379-7734
jweiner@buddlarner.com

*Counsel for Relator*