# Sadowski Katz LLP

830 Third Avenue, 5th Floor
New York, New York 10022
Phone: 646-503-5341

Fax: 646-503-5348
rsadowski@sadowskikatz.com
rkatz@sadowskikatz.com

June 5, 2018

*Via ECF*
Hon. Lorna G. Schofield
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States of America ex rel. Brian Aryai v. Skanska et al.,*
     09 Civ. 5456 (S.D.N.Y.)

Dear Judge Schofield:

   We represent Brian Aryai ("Relator"), in the above-referenced qui tam action initially filed under seal pursuant to the Federal False Claims Act ("FCA"). We write in response to the Defendant Hunter Roberts Construction Group, LLC's ("Hunter Roberts") May 29, 2018 pre-motion letter (Doc. 116) setting forth the bases for its anticipated motion to dismiss the Second Amended Complaint ("SAC"). We respectfully request three extra pages to respond to Hunter Roberts pre-motion letter given the number and complexity of the issues raised by its letter.

## A. The SAC Meets Rule 9(b) Requirements

   Hunter Robert's motion to dismiss is based, in part, on Fed. R. Civ. P. 9(b), which requires claims sounding in fraud such as claims under the FCA to be pled with particularity. *U.S. ex rel. Chorches v. American Medical Response, Inc.,* 865 F.3d 71, 81-93 (2d Cir. 2017) (strong inference that specific false claims were submitted meets Rule 9(b) (canvasing cases)). In *Chorches*, the Second Circuit extensively examined and reiterated the Rule 9(b) standard, where, as here, the Relator is not in possession of certain information, which is in the exclusive hands of the Defendants, such as certified payroll submissions and claims for payment. *Id.* at 86-87 (2d Cir. 2107). The *Chorches* court stated, "Rule 9(b) is 'designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Id.* at 86-87 (quoting *U.S. ex rel. Ladas v. Exelis*, 824 F.3d 16, 25 (2d Cir. 2016)). Here, as in *Chorches*, "[a]llowing the complaint in this case to go forward does no violence to those purposes. First, 'it is the pleading of the circumstances of the alleged fraud with a certain amount of precision that serves [Rule 9(b)'s] purpose by apprising the defendant . . . of the nature of the claim and the acts or statements or failures to disclose relied upon by the plaintiff as constituting the fraud being charged.'" *Id.* at 87 (quoting 5A C. Wright et al., Fed. Prac. & Proc.

§ 1297 (3d ed. April 2017 Update)). "'[T]he point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process.'" *Id.* (quoting *U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015)).  Here, all Defendants are aware of the pervasive industry-wide scheme.  Indeed, Hunter Roberts admits to an extensive internal investigation spurned by the federal criminal investigation of the gratis pay enterprise.  *See* SAC, Ex. I (Doc. 102-10) (Non-Prosecution Agreement & Joint Statement). [1]

In response to Defendants' pre-motion letter, the Relator is also seeking leave to file a Third Amended Complaint ("SAC"), which will further render Hunter Robert's alleged Rule 9(b) failings moot.  Relator has alleged, which has been confirmed in criminal investigations, an industry-wide conspiracy, whereby every Defendant who used Union Labor—a governmental requirement for its funded projects—submits false certified payroll records reporting hours that were not worked.  The common cord running through all Defendants' participation in the gratis pay scheme is the undeniable fact that they all conspired with the same Unions to engage in this industry-wide scheme.  Accordingly, Relator intends to amend the SAC to plead with greater particularity the strong inference of the conspiracy with the Unions to submit false billings. Relator intends to plead the following specific facts:

- Defendant International Union of Operating Engineers Local 14-14B was fraudulently paid for overtime hours that were never worked which, in part, funded fringe benefits for Union laborers.
- Mason Tenders District Council of Greater New York and Long Island Local 79 is a labor union like Local 14, that provides benefits that are funded in part by the fraudulent overtime scheme.
- The New York City District Council of Carpenters and Joiners of America Local 1536 is comprised of eight Locals with 25,000 union members and like Locals 14 and 79, provides benefits that are funded in part by the fraudulent overtime scheme.
- Specifically, for example, Defendant Mason Tenders District Union 79 Foreman Mark Beatini's timesheets reflect that for every 8 hours Beatini worked, he was paid 2 additional overtime hours, which he did not work and for which the union agreement did not justify.  Beatini's certified payroll shows he worked 8 hours plus 2 hours of overtime on September 3, 4, 5, 8 and 9.  Beatini's Job Timesheets show that he worked 8 hours plus 2 hours on September 10, 11, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 29, and 30, 2008.
- With respect to Defendant Local 1536, on June 23, 24, 25, 26, and 30, 2008, the following union members' Time and Material Daily Work Tickets show they worked 8 hours straight time and 2 hours of overtime that they did not work:

---

[1] It appears that exhibit A to the Non-Prosecution Agreement was inadvertently omitted from the SAC exhibits.  Accordingly, we are attaching it here, and seek leave to amend the SAC to use the correct name of the exhibit as a Non-Prosecution Agreement, instead of "Deferred Prosecution Agreement."

Harry Davis, Jeffery Allen, Ralph Murdough, Michael Culken, Calvin Milligan, Michael Beatty, Jeffrey Jean, and Dominick DeLuca. [2]

With respect to the alleged Fed. R. Civ. P. 9(b) requirement to plead fraud with particularity, Relator believes the complaint more than adequately meets that standard of pleading an industry-wide fraud scheme.  Contrary to Hunter Roberts' suggestion, there is no prohibition in the False Claims Act or caselaw against allowing a relator to plead an industry-wide scheme.  *See e.g.*, *U.S. ex rel. Rille v. Hewlett-Packard Co.,* 784 F. Supp. 2d 1097, 1098 (E.D. Ark. 2011), *aff'd sub nom. Roberts. v. Accenture, LLP*, 707 F.3d 1011 (8th Cir. 2013) and *U.S. ex rel. Rille v. Cisco Systems*, 2011 U.S. Dist. LEXIS 115285, at *3-6 n. 5 (E.D. Ark. Oct. 5, 2011), *aff'd*, 748 F.3d 818 (8th Cir. 2013).  In the Rille cases, the relators' complaints alleged that: (1) technology services and products companies have "alliance relationships" with each other, by which they pay and are paid "kickbacks in the form of rebates, discounts, and other forms of compensation in return for recommendations or assistance in obtaining federal contracts;" and (2) the companies failed to disclose their best pricing to the federal government. Relator Rille learned of the alliance relationships while employed by NCR and Accenture, and relator Roberts was a Coopers & Lybrand partner who investigated "alliance relationships" by speaking with partners of government contractors and created a list of contractors who engaged in the kickback schemes. *Id.*  In the ensuing dispute over the relator's award, the Court found that but for the relator's complaint the government would never have commenced the investigation on which the settlement was based.  Ultimately, the Court found that if the relator's allegations overlap with the claims by the government, the relators are entitled to an award of the proceeds of the action.  Here too, without Mr. Aryai discovering, investigating, and reporting the scheme, as alleged in the qui tam complaint, and confirmed in the resolution of four criminal investigations, with admissions by the defendants, the Government would not have known about the gratis pay scheme practiced by the construction industry and the labor unions employed by those companies.

The second basis for Hunter Roberts' motion to dismiss is that the Relator's claims are barred by public disclosure.  Relator, however, is the "original source," which exempts Mr. Aryai from the public disclosure bar.  The criminal investigation of Hunter Roberts was not commenced until after Mr. Aryai handed his Report of Investigation to the United States Attorney's Office by hand delivering his findings to United States Attorney Loretta E. Lynch, who personally oversaw the sequel of DPAs arising from the systemic and related fraudulent scheme that emanated from a singular root cause.  Soon after the investigation commenced, the United States Attorney Loretta E. Lynch personally confirmed all the allegations of fact that Mr. Aryai's investigation uncovered—most importantly, that the gratis pay scheme was an industry-wide practice.  Because Mr. Aryai knew that the gratis pay scheme was an industry-wide standard in the New York Metropolitan area, based on his independent investigation, which went far beyond what he learned from his position at Bovis, in his initial complaint, he named John Doe defendants, and named Hunter Roberts in the SAC after the seal was lifted.  There was no need to amend the complaint while under seal to name Hunter Roberts because the United States Attorney for the Southern District of New York, which office was in charge of the *qui tam* investigation was notified of the criminal investigation of Hunter Roberts for the gratis pay

[2] Dominick DeLuca is omitted on June 24, 2008, and Michael Beatty is omitted on June 26, 2008.  Michael Culken only has 7.5 hours of straight time on June 30, 2008.

3

scheme, through interoffice channels at the highest levels,[3] through public press releases issued by the United States Attorney for the Eastern District of New York, and through regular communications between Mr. Aryai's counsel and Assistant United States Attorney Lawrence Fogelman, who was handling the *qui tam* case.[4]   Accordingly, even without an amendment of the *qui tam* complaint specifically identifying Hunter Roberts, the Government understood it was a target of a criminal investigation and had every opportunity to consider intervening in the *qui tam* complaint.  For the same reason, the statute of limitations should not bar the False Claims Act claims against Hunter Roberts.  "Federal Rule 15(c) provides that an amended complaint adding a new defendant will relate back to the original complaint if it 'asserts a new claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," the defendant "will not be prejudiced in defending on the merits," and "knew or should have known that the action would have been brought against it."  Fed. R. Civ. P. 15(c)(1)(C).  *See also Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1075 (N.D. CA. 2013) (Under California state law, which is more restrictive than federal law, an amended complaint relates back to the original complaint when the new defendant is being substituted for a fictitious Doe named in the original complaint.).  Hunter Roberts was a Doe defendant, Hunter Roberts was known to be under investigation for the precise wrong doing alleged in the complaint, and moreover, the statute of limitations was tolled while the matter was under seal.

## B.    Hunter Roberts Is Estopped from Denying Liability under the FCA

In the Non-Prosecution Agreement "Hunter Roberts accept[ed] responsibility to remediate its commission of the Unlawful Conduct." SAC Ex. I at 2 ¶ 3.  Hunter Roberts agreed to pay restitution totaling $1,007,045.52 to its victims and a $6 million penalty.  Moreover, Hunter Roberts has admitted liability relating to the gratis pay scheme in the Non-Prosecution Agreement it entered with the United States Attorney for the Eastern District of New York and in the accompanying Joint Statement of Facts ("Joint Statement"), which is Exhibit A to the Non-Prosecution Agreement.  *See* Ex. A hereto.  In the Joint Statement, Hunter Roberts admits to the exact scheme that Mr. Aryai reported and referred to the United States Attorney and he alleged in his *qui tam* suit.

---

[3] The Eastern District of New York approached the Southern District of New York to have Mr. Aryai's *qui tam* transferred to the Eastern District of New York, but the Southern District of New York, "did not acquiesce" in that request.  Attached hereto as Exhibit B is a copy of an e-mail from United States Attorney Loretta Lynch to Mr. Aryai.

[4] Before filing the SAC in this case, it was presented to AUSA Lawrence Fogelman to inquire whether the Government wanted the SAC filed under seal.  AUSA Fogelman, upon review of the SAC, emailed Mr. Aryai's counsel to inform counsel that the Government was not requesting to the have SAC filed under seal.  Attached hereto as Exhibit C is a copy of the e-mail exchange between counsel for Mr. Aryai and AUSA Fogelman.  In any event, the text of the sealing provision was not intended to categorily bar plaintiffs from amending their complaints in FCA actions, particularly when there was "no prejudice to the rights of the Government or the defendants."  *U.S. ex rel. Kolchinsky v. Moody's Corp.*, 182 F. Supp. 3d 186, 197-98 (S.D.N.Y. 2016) (citing *U.S. ex rel. Mikes v. Straus*, 931 F. Supp. 248, 259 (S.D.N.Y. 1996)).  District Courts agree that when an amended complaint makes similar allegations of fraud, resealing is not required.  *Id*. at 198 (citations omitted).

Hunter Roberts contends that Relator has not identified federally funded projects in the SAC. As stated in the Joint Statement, Hunter Roberts provided services on projects that included the Queens Hospital Center Ambulatory Care Pavilion (a project funded in part by Medicare—a federally funded program, and Medicaid—a State and federally funded program). In addition, the SAC lists the following projects that were also funded at least in part with federal funds through Medicare and Medicaid: New York-Presbyterian Hospital, Northwell Health, New York City Health and Hospital Corp., Mount Sinai Medical Center, and Morningside Nursing Home. *See* SAC Ex. E (Doc 102-5).

The Joint Statement states that Hunter Roberts' pay rates for union labor were defined by collective bargaining agreements entered with the Cement League on Hunter Roberts' behalf. Ex. A (Joint Statement) at 2 ¶ 3. The Cement League Agreement governs the pay rates of workers from the Mason Tenders' District Council of Greater New York ("Local 79"), including Local 79 Foremen. *Id*. Hunter Roberts' responsibility on the construction projects it worked "included supplying Local 79 workers including the Labor Foremen." *Id*. at ¶ 4. Under the terms of the construction management contract for each federally funded project, Hunter Roberts was to "bill clients for work actually performed by the Labor Foremen at the pay rates specified in the Cement League Agreement" and "seek prior approval from clients to bill Labor Foremen . . . at pay rates in excess of the General Conditions Contract Rate." *Id*. at 3 ¶ 5. To track union hours worked, Hunter Roberts required Labor Foremen for each project to fill out a single time sheet on a weekly basis. A Hunter Roberts superintendent was to review the time sheet for accuracy and either sign it or present it to a project manager for signature. Hunter Roberts then used the hours listed on the time sheet to calculate the pay for union workers and to send billing requisitions to Hunter Roberts' clients. Id. at ¶ 6. On publicly funded projects, the time sheets were submitted in certified payrolls, which included sworn statements by Hunter Roberts. Hunter Roberts generated the certified payrolls for Local 79 workers by using the same time sheets submitted by the Labor Foremen. *Id*. at ¶ 7.

In the Joint Statement, Hunter Roberts admits that from approximately 2006 through November 2013, it together with others, devised a scheme to defraud federal, state and local government contract agencies. Hunter Roberts further admits that from "2006 through 2011, Hunter Roberts maintained a systemic practice, employed on virtually all of its projects, of (a) adding one to two hours of unworked or unnecessary "guaranteed" overtime per day to the time sheets for Labor Foremen; (b) providing four hours of guaranteed overtime per day, whether worked or not, for one senior Labor Foreman . . ." *Id*. at 4 ¶ 9 (emphasis added). From "2010 to November 2013, Hunter Roberts paid Labor Foremen at wage ra[t]es that exceeded the General Conditions Contract Rate." *Id*. at 4-5 ¶ 10. This is precisely the industry-wide scheme that Mr. Aryai discovered, investigated, and reported to authorities, which without Mr. Aryai's bravery and the risks to his career and life, might still be concealed today.

### C.     The Government Has Not Released Hunter Roberts from FCA Liability

The Non-Prosecution Agreement provides Hunter Roberts a very limited release, which contrary to Hunter Roberts false assertion, does not release Hunter Roberts from False Act liability in this *qui tam* action. The Non-Prosecution Agreement provides that "the **Office**" (defined as "The United States Attorney's Office for the Eastern District of New York" (SAC

5

Ex. I at 1 (Doc. 102-10) (emphasis added)) "will not: (a) institute or pursue any criminal charges against Hunter Roberts arising out of the Unlawful Conduct; or (b) pursue any civil claims against Hunter Roberts, including but not limited to causes of action pursuant [to] the federal False Claims Act, based on the Unlawful Conduct. **This non-prosecution provision binds only the Office.**"[5]  *Id.* at 10 ¶ 10 (emphasis added).  The Non-Prosecution Agreement further provides that "[i]t is understood that the Agreement is binding on Hunter Roberts and the Office, but specifically does not bind any other Federal agencies, any state or local law enforcement agencies, or any licensing or regulatory authorities." *Id.* at 14 ¶ 17.  In recognizing that the release in the Non-Prosecution Agreement is limited to the United States Attorney's Office for the Eastern District of New York, Hunter Roberts explicitly reserved the right to "raise defenses or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not otherwise violate any term of this Agreement." *Id.*  Accordingly, Hunter Roberts assertion that the United States released it from civil liability is utterly unfounded and disingenuous.  Moreover, the Non-Prosecution Agreement prohibits "Hunter Roberts from mak[ing] any public statement, in litigation or otherwise, contradicting its acceptance of responsibility to remediate [its] Unlawful Conduct." *Id.* at ¶ 14.

### D.     Relator's Cross Motion for Summary Judgment as to Hunter Roberts

As with Plaza Construction and Tishman, Relator intends to cross-move against Hunter Roberts for summary judgment as to liability.  Here, Hunter Roberts is no less bound by its admissions in the Joint Statement of Facts, and Hunter Roberts has cited no support for the proposition that a Non-Prosecution Agreement—with the admission of liability—should have any less binding effect than a Deferred Prosecution Agreement.  In both situations, Defendants made admissions to the material elements of liability under the False Claims Act and paid restitution and penalties.

Respectfully submitted,

Robert W. Sadowski, Esq.
SADOWSKI KATZ LLP
830 Third Avenue, 5th Floor
New York, New York 10022
Tel:  (646) 503-5341
rsadowski@sadowskikatz.com

Joshua L. Weiner, Esq.
BUDD LARNER, PC
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
Tel.:   973-379-4800
Fax.:   973-379-7734
jweiner@buddlarner.com

---

[5] The United States Attorney's Office for the Eastern District of New York had no jurisdiction to release Mr. Aryai's qui tam claims because the civil FCA case was filed in the Southern District of New York.  See Ex. B hereto.

Joseph G. Sconzo, Esq.*
Law Office of Joseph G. Sconzo, P.A.
250 S. Central Blvd. Suite 201
Jupiter, FL 33458
Tel: 561-781-3000
Fax: 561-781-3001
josephsconzolaw@gmail.com

*Attorneys for Plaintiff/Relator*


By:     s/Robert W. Sadowski

Dated: June 5, 2018                          Robert W. Sadowski, Esq.


*Pro Hac Vice*