UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA *ex. rel.*
BRIAN ARYAI,                                                  Civil Action No. 09-cv-5456-LGS

         Plaintiff/Relator,

           against.                                          **THIRD AMENDED *QUI TAM*
                                          COMPLAINT AND JURY
                                          DEMAND**

SKANSKA, TURNER CONSTRUCTION
COMPANY; TISHMAN CONSTRUCTION
CORPORATION, PLAZA CONSTRUCTION
CORPORATION, TISHMAN/WASHINGTON
GROUP, TISHMAN/HARRIS, PHOENIX
CONSTRUCTORS, FLUOR ENTERPRISES, INC.,
SLATTERY SKANSKA, INC., AND GRANITE
HALMAR CONSTRUCTION COMPANY, INC.;
SLATTERY SKANSKA/EDWARDS &
KELSEY DESIGN-BUILD, HUNTER
ROBERTS CONSTRUCTION GROUP, AND
ABC CORPS., INC. 1-100,

         Defendants.

_____

      Plaintiff United States of America by and through their relator Brian Aryai, files

this Third Amended *Qui Tam* Complaint against Defendants Skanska, Turner

Construction Company, Tishman Construction Corporation, Plaza Construction

Corporation, Tishman/Washington Group, Tishman/Harris, The joint venture interests of

Fluor Enterprises, Inc., Slattery Skanska, Inc. and Granite Halmar Construction Company,

Inc. in Phoenix Constructors, Slattery Skanska/Edwards & Kelsey Design-Build, Hunter

Roberts Construction Group, and ABC Corps., Inc., 1—100 (hereinafter "Defendants"),

states:

**INTRODUCTION**

1.      This is an action to recover damages, civil penalties, other statutory relief on behalf of the United States of America pursuant to the *qui tam* provisions of the Federal False Claims Act, 31 U.S.C. §3729 *et. seq.* ("FCA").

**SUMMARY OF THE ALLEGATIONS**

2.      Plaintiff/Relator Brian Aryai, a retired Special Agent of the United States Treasury Department, a certified public accountant, and a certified forensic and fraud examiner, was the former Senior Vice President of Finance at Bovis Lend Lease LMB, Inc. ("BLL").  BLL is one of the leading general builders in the United States and has been the general contractor and/or construction manager on a number of federally funded projects in the New York Metropolitan Area.

3.      Independently, and together, defendants SKANSKA, TURNER CONSTRUCTION COMPANY; TISHMAN CONSTRUCTION CORPORATION, PLAZA CONSTRUCTION CORPORATION, TISHMAN/WASHINGTON GROUP, TISHMAN/HARRIS, THE JOINT VENTURE INTERESTS OF FLUOR ENTERPRISES, INC., SLATTERY SKANSKA, INC., AND GRANITE HALMAR CONSTRUCTION COMPANY, INC., IN PHOENIX CONSTRUCTORS, SLATTERY SKANSKA/EDWARDS & KELSEY DESIGN-BUILD, HUNTER ROBERTS CONSTRUCTION GROUP, AND ABC CORPS., INC. 1-100, knowingly and systematically submitted false and fraudulent payment requisitions to federal, state, and municipal governmental entities.  The payment requisitions contained fraudulent and inflated payroll records by including "gratis pay" and "ghost pay" for Union workers.  Union labor is required on all major construction projects which are funded in whole or part by federal, state, and municipal governmental entities in New York.

2

4.      As part of the scheme to defraud, Union foreman routinely submitted two (2) hours per day of overtime to the defendants, despite the fact that the individuals did not work the overtime hours.  Defendants knew of this industry wide practice, accepted the fraudulent time records from the Union, and then passed those fraudulent time records on to federal, state, and municipal governmental agencies funding the projects.

5.      Relator Brian Aryai, in the course of his employment as Senior Vice President of Finance at BLL discovered these payments and then independently conducted a comprehensive investigation into the Union time records and the payment for those fraudulent hours by Defendants.  After confirming the payments for the times submitted, Relator Brian Aryai confronted numerous BLL executives who admitted and confirmed that gratis pay and ghost pay were long-standing industry-wide practices.

6.      Several of the BLL executives confronted by Relator Brian Aryai had also worked for other Defendants and confirmed that those Defendant companies engaged in the practice of knowingly submitting fraudulent payment records to federal, state, and municipal governmental entities who funded construction projects those Defendant companies were involved in.

7.      Relator Brian Aryai, as part of his comprehensive investigation, independently and voluntarily went directly to job sites to verify the presence, or lack thereof, of the Union employees who were submitting the inflated time records.  Through his actions, Relator Brian Aryai confirmed the absence of the employee on the job for hours which were submitted by the Union for payment.

8.      Upon discovery and confirmation of this fraudulent scheme to defraud federal, state, and municipal governmental entities, Relator Brian Aryai voluntarily provided the accumulated information and results of his investigation to the appropriate federal and state

3

law enforcement and prosecuting agencies.  The information was provided to said agencies before the initial Complaint was filed.

9.       Based entirely upon the investigation conducted by Relator Brian Aryai, and the information that was derived therefrom of the industry-wide fraudulent practices, a criminal investigation was opened which resulted in prosecution by the United States Attorney's Office for the Eastern District of New York.  As set forth in three Deferred Prosecution Agreements and one Non-Prosecution Agreement, and Press Releases, which are attached as Exhibits to this Third Amended Complaint, the United States Government recouped tens to hundreds of million dollars in fines, penalties, and restitution from some of the largest construction companies in the United States, including the named Defendants Plaza Construction, Hunter Roberts Construction Group, and Tishman Construction Corporation.  Bovis Lend Lease is no longer a named Defendant; it settled the federal FCA case against it with the Federal Government and the Relator.

## JURISDICTION AND VENUE

10.      This action arises under the FCA.  This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

11.      Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because the acts proscribed by the FCA occurred in this District, and Defendants have transacted business in this District.

## PARTIES

12.      Relator, Brian Aryai ("Aryai") is a resident of Tarpon Springs, Florida, and a former Senior Vice President of Finance of BLL, a major international construction firm conducting business in the New York Metropolitan Area.  Aryai is a certified public accountant, certified fraud examiner, and a retired Special Agent of the United States

Treasury Department, who is skilled in conducting forensic analyses and fraud investigations.

13.     Defendant Turner Construction Company ("Turner") is a corporation with an office located at 666 Third Avenue, New York, New York, and is engaged, *inter alia*, in the business of construction management and general construction.  Turner is one of the leading general builders in the United States has been the general contractor and/or construction manager on a number of federally funded projects, in whole or in part, in the New York Metropolitan Area, including the Atlantic Avenue MTA Station Rehabilitation Project inn Brooklyn.  A representative sampling of governmentally funded construction projects performed by Turner is attached as Exhibits A and K.

14.     Defendant Skanska is a multinational construction company with headquarters located in Sweden and has an office located at 136 Madison Avenue, New York, New York. Skanska is the sixth largest construction company operating in the United States and Skanska has been the general contractor and/or construction manager on a number of federally funded projects, in whole or in part, in the New York Metropolitan Area including the World Trade Center Transportation Hub.  A representative sampling of governmentally funded construction projects performed by Turner is attached as Exhibit B.

15.     Defendant Plaza Construction Corporation is a corporation with an office located at 260 Madison Avenue, New York, New York, and is engaged, *inter alia*, in the business of construction management and general construction.  Plaza is one of the leading general builders in the United States and has been the general contractor and/or construction manager on a number of federally funded projects, in whole or in part, in the New York Metropolitan Area.  A representative sampling of governmentally funded construction projects performed by Plaza is attached as Exhibit C.

16.      Defendant Tishman Construction Company ("Tishman") is a corporation with its headquarters located at 102 N. End Avenue, New York, New York, and is engaged, *inter alia*, in the business of construction management and general construction. Tishman is one of the leading general builders in the United States and has been the general contractor and/or construction manager on a number of federally funded projects, in whole or in part, in the New York Metropolitan Area including One World Trade Center, East River Science Project, and Grand Avenue Bus Depot and Maintenance Project.  A representative sampling of governmentally funded construction projects performed by Tishman is attached as Exhibits D and K.

17.      Bovis Lend Lease, LMB, Inc. ("BLL") is a corporation with offices located at 200 Park Avenue, New York, New York, and is engaged *inter alia* in the business of construction management and general construction.  BLL is one of the leading general builders in the United States and has been the general contractor and/or construction manager on a number of federally funded projects, in whole or in part, in the New York Metropolitan Area, including the World Trade Center ("WTC") Memorial and 130 Liberty Street.  BLL has settled its federal FCA case with the United States and Aryai.

18.      Defendant Tishman/Washington Group is a joint venture comprised of Tishman Construction Corpora

tion and the Washington Group.  Tishman/Washington Group was the construction manager of the Grand Avenue Bus Depot Project.

19.      Defendant Tishman/Harris is a joint venture comprised of Tishman and Frederick R. Harris.  Tishman/Harris was the general contractor on the Whitehall Ferry project.

20.      Defendant Phoenix Construction is the joint venture interests of Fluor Enterprises, Inc., Slattery Skanska, Inc., and Granite Halmar Construction Company, Inc., in

Phoenix Constructors.  Phoenix is the construction manager/general contractor on the WTC Transportation Hub project.

21.     Defendant Skanska/Edwards & Kelsey Design—Build ("Skanska/Edwards") is a joint venture comprised of Slattery Corporation, Skanska USA Civil, Inc., and Edwards & Kelsey.  Slattery Skanska/Edwards is the construction manager on the Arch Street Yard and Shop Project.  *See* attached Exhibit K.

22.     Defendant Hunter Roberts Construction Group is engaged *inter alia* in the business of construction management and general construction.  Hunter Roberts is one of the leading general builders in the United States and has been the general contractor and/or construction manager on a number of federally funded projects, in whole or in part, in the New York Metropolitan Area.  A representative sampling of governmentally funded construction projects performed by Hunter Roberts is attached as Exhibit E.  Hunter Roberts performed an extensive internal investigation spurned by the federal criminal investigation of the fraudulent enterprise known as gratis pay.  *See* Exhibit I (Non-Prosecution Agreement & Joint Statement).

23.     Defendants ABC Corporations 1—100 are companies engaged in the business of construction management and/or general construction and who knowingly submitted fraudulent payroll amounts to a governmental entity for payment.

24.     The International Union of Operating Engineers Local 14-14B was fraudulently paid for overtime hours by Defendants that were never worked which, in part, funded fringe benefits for Union laborers.

25.     Mason Tenders District Council of Greater New York and Long Island Local 79 is a labor union like Local 14, that provides benefits that are funded in part by the fraudulent overtime scheme paid by Defendants.

26.     The New York City District Council of Carpenters and Jointers of America

Local 1536 is comprised of eight Locals with 25,000 Union members and like Locals 14 and

79, provides benefits that are funded in part by the fraudulent overtime scheme engaged in by

Defendants.

## **ALLEGATIONS**

27.     Defendants are major construction companies who dominate the multi-

billion dollar construction market in the New York Metropolitan Area.  Virtually all of

their major construction projects are funded by state, municipal, or federal monies, and

Union labor is a requirement of their contracts.  Indeed, each of the Defendants hired the

same Unions to work on their governmentally funded projects.

28.     Unions supply the labor for the projects in issue and Union payroll records are

routinely submitted to Defendants for payment.  After receiving the payroll records,

Defendants then submit certified payroll records for payment to federal, state, and/or

municipal government entities.

29.     For decades, there has existed in the construction industry in the New York

Metropolitan Area, the practice of billing for work not performed by Union members.

Among other variations on this theme, Union foreman routinely submitted two (2) hours per

day of overtime as part of their remuneration, despite the fact that the individuals did not

work the overtime hours.  This longstanding and widespread practice was well known to

Defendants, and they knowingly accepted these fraudulent time records from the Union and

then Defendants incorporated those fraudulent time records into certified payroll reports

forming the basis of payment on the project.  This practice has long been referred to as "gratis

pay," and Defendants have paid for these "ghost hours," and then recouped these monies from

federal, state and local government funds.

30.     In addition to the two (2) hours of gratis pay which the Union foreman

received for these ghost hours, the Union itself received fringe benefits in the amount of

40% to 50% of the amount paid to every foreman which also was well known to

Defendants who recouped these monies from federal, state, and/or local government funds.

31.     The International Union of Operating Engineers Local 14-14B provides an

annuity plan, which provides an extra retirement benefit to members who have worked in the

construction industry.  Local 14 also provides pension benefits to qualifying retirees.  Local 14

also provides members and their families with medical, hospital, death, prescription drug,

dental and vision benefits.  Local 14 Fringe Benefits Funds are located at 141-57 Northern

Blvd, Flushing, NY 11354.  Moneys fraudulently paid for overtime hours that were never

worked funded part of these benefits.  Local Unions are co-conspirators with Defendants in

the gratis pay scheme.

32.     Mason Tenders District Council of Greater New York and Long Island Local

79 is a labor union.  It has nearly 15,000 members including construction workers, asbestos

and hazardous materials handlers, recycling and waste handlers.  Local 79, like Local 14,

provides benefits that are funded in part by the fraudulent overtime scheme.

33.     The New York City District Council of Carpenters and Joiners of America

Local 1536 is comprised of eight Locals with 25,000 union members.  Union members are

carpenters, millwrights, dock builders, marine divers, core drillers, timbermen, cabinetmakers,

floor covers and industrial workers.  Local 1536, like Locals 14 and 79, provides benefits that

are funded in part by the fraudulent overtime scheme.

34.     For example, Mason Tenders District Union 79 Foreman Mark Beatini's

timesheets reflect that for every 8 hours Beatini worked, he was paid 2 additional overtime

hours, which he did not work and for which the Union agreement did not justify.  Beatini's

certified payroll shows he worked 8 hours plus 2 hours of overtime on September 3, 4, 5, 8,

and 9, 2008.  Beatini's Job Timesheets show that he worked 8 hours plus 2 hours on

September 10, 11, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 29, and 30, 2008.  Attached

hereto as Exhibit L are copies of time sheets, which are incorporated herein by reference.

35.     With respect to Local 1536, on June 23, 24, 25, 26, and 30, 2008, the

following Union members' Time and Material Daily Work Tickets show they worked 8

hours straight time and 2 hours of overtime that they did not work:  Harry Davis, Jeffery

Allen, Ralph Murdough, Michael Culken, Calvin Milligan, Michael Beatty, Jeffrey Jean, and

Dominick DeLuca.  *See* Ex. L.  During his investigation, Relator had collected hundreds of

time sheets similar to Exhibit L, that he confirmed showed fraudulent gratis pay, however,

these records and Relator's file of his investigation were pilfered from his office at BLL.

36.     On or about April 7, 2008, Plaintiff/Relator Brian Aryai commenced his

employment as Senior Vice President of BLL.  Prior to accepting that position, Relator

discussed issues within BLL concerning transparency and financial reporting.  In the course

of his employment at BLL, Relator Brian Aryai performed a comprehensive investigation

into the financial reporting regarding federal, state, and municipally funded projects and

discovered a longstanding systemic fraudulent Union payroll practice which was on going.

Relator Brian Aryai independently verified and confirmed that these practices were being

undertaken by BLL and all other Defendants in connection with construction projects in the

New York Metropolitan Area.

37.     Every governmentally funded construction project requires general contractors

and all subcontractors to submit certified payroll records.  For example, the City of New York

Office of the Comptroller Bureau of Labor have standardized payroll reports.  Certified

payroll reports are to be submitted with requisitions for payment.  The certified payroll forms

serve several purposes and contain important information material to the governmental entity

funding the construction project.  The payroll report shows the base rate of pay per hour,

which base rate must be the prevailing wage rate for the particular type of work performed by laborers, *e.g.,* carpentry.

38.     In addition, the certified payroll identifies the name, address, and last four digits of the social security number of the worker.  The form identifies the trade and classification of each worker, *e.g.*, electrician and journeyman or foreman.  The form shows the hours worked each day both regular hours and overtime hours.  The form shows total hours worked, base rate of pay per hour, total base pay, and rate per hour.  The form shows supplemental benefits paid to an identified Union its address, phone number, contract registration number, job code, pay period, project name and location, tax identification number and the responsible/funding agency.

39.     The certified payroll report contains a certification which, varying somewhat by agency, states: "This certified payroll has been prepared in accordance with the instructions contained on the reverse side of this form.  I certify that the above information represents wages and supplemental benefits paid to all persons employed by my firm for construction work on the above project during the period shown.  I understand that falsification of this statement is a punishable offense."  The certification is signed by an authorized officer of the contractor or subcontractor, dated, and submitted to the responsible funding governmental agency.

40.     The Time and Material Daily work tickets (Ex. L) used by BLL are slightly different in form and content from the City's form, however, they serve the same purpose and provide the information regarding hours worked by each identified Union laborer.  They also contain a certification by the Superintendent Larry Wood and Department Head Dennis Prude.  Ex. L.  The time sheets are also signed by Bovis employee Dennis Espinoza.  *Id.*  As part of Ex. L, Relator was working with his onsite senior Project Accountant Christopher D. Soleberry to quantify the amount of gratis pay, Mr. Soleberry also communicated with

Raymond Kimmelman-DeVries a Bovis Project Manager, who confirmed "discrepancies"
with payroll questions.  *See* Ex. L at LMB0545081.

41.     Upon confirmation of the continued and ongoing fraudulent payroll practice
that was being perpetrated by BLL, Plaintiff/Relator Brian Aryai emailed and spoke with
numerous company executives at BLL, who admitted that the gratis pay practice was a
longstanding industry-wide practice and that BLL and the other Defendant construction
companies and general contractors routinely submitted payment requisitions on publicly
funded projects which contained fraudulent payroll records.  Several of these BLL employees
had previously been employed with other construction companies including Defendants and
had knowledge that those Defendants were engaged in this industry-wide practice.

42.     Relator Brian Aryai further independently established that during the course of
each project, Defendants had systematically submitted false and fraudulent payment
requisitions that contained fraudulent and inflated payroll records by including gratis pay, and
ghost hours for Union workers.  His investigation revealed that there were at least fifty (50)
Union employees and foremen who were receiving gratis pay.  Pursuant to the contracts
applicable to each project, Defendants submitted those fraudulent certified payroll records on
a regular and periodic basis to federal, state, and/or municipal entities knowing that the
governmental entities rely upon those certified payroll records to issue payment on the
projects.

43.     In the diligent performance of his responsibilities as Senior Vice President of
Finance at BLL, Relator Brian Aryai visited job sites and verified that the Union workers
were not present and yet Union payroll requisitions were submitted to and paid by BLL for
the falsely reported additional hours.  Those payroll records were then submitted to federal,
state, and/or municipal entities funding the projects.

44.     As Controller at Bovis Lend Lease, Aryai had primary oversight authority over the certified payroll, which is how he discovered the systemic overtime fraud.  After Aryai collected information that led him to suspect that the hours on the certified payroll may be falsified, he conducted his own investigation and determined conclusively that ALL foremen and certain other favored tradesmen were paid the fraudulent overtime on a daily basis.

45.     Aryai also determined that the named Defendants, which used the same Union labor, also submitted certified payroll bearing the added fraudulent hours.  Both John Voci and Frank Hyers, both Senior Executives at BLL specifically admitted to Aryai that the practice was in place due to a silent agreement with the Unions and that the companies named as Defendants, in addition to Bovis Lend Lease, also engaged in the practice.

46.     Aryai's investigation entailed numerous interviews of tradesmen, the results of which formed a basis for the discovery and corroboration of the fraud.  In these interviews, Aryai showed foremen and others who were fraudulently paid copies of the certified payroll from various projects and these tradesmen admitted that the addition of two (2) unworked hours was the standard procedure applied in preparation and submission of all certified payrolls.

47.     In October 2008, Aryai personally visited the World Trade Center Transit Hub construction site and after reviewing certified payrolls, interviewing foremen, and surveillance of the site, he confirmed that the gratis pay scheme was in place there.  After conducting these investigative steps, Aryai met with Steven Sommer, a fellow Bovis Lend Lease Senior Vice President, who confirmed the that the foremen at this Joint Venture were all paid fraudulent gratis pay regardless of which Joint Venture member put and paid the foremen at work. The Defendant members of the Phoenix Constructors Joint Venture are the interests Fluor Enterprises, Inc., Slattery Skanska, Inc., and Granite Halmar Construction Company, Inc.

48.      During the course of his independent investigation, Relator Brian Aryai

notified BLL executives that the ongoing practice was illegal and that it should be ceased

immediately in order to reduce exposing the company to criminal prosecution.  Relator Brian

Aryai was assured by BLL executives, after he directed the company to cease the illegal

practice of gratis pay and ghost pay, that the company would continue to pay the Union

employees for gratis pay or ghost pay directly from BLL funds without submitting the

fraudulent payroll records to federal, state, and/or municipal government entities for

repayment, thus not exposing the company to further criminal violations.  Relator Brian Aryai

then learned that BLL executives, including the Managing Director of BLL's New York

office, devised a scheme whereby the BLL Payroll Manager, who was under the direct

supervision of Relator Brian Aryai, continued the fraudulent billing practice and false

submissions to federal, state, and municipal governmental agencies.

49.      On or about January 22, 2009, after fully apprising BLL executives of the

fraudulent practice of submitting fraudulent certified payroll records which were known to

the Defendants to be false and inaccurate to federal, state, and/or municipal government

agencies with the intent to obtain payment based upon the false and inaccurate Union

payroll, Relator Brian Aryai was terminated from his position at BLL.

50.      Shortly prior to his termination, Relator spoke to executives for several of

Defendants, including, but not limited to, Plaza Construction, James Rosenthal, the former

CFO of Tishman Construction, and Mike McNally at Skanska.  On these telephone calls,

Relator's counterparts verbally confirmed their respective companies' past, current, and future

involvement and participation in the gratis pay scheme.  Two of the executives from Plaza and

Tishman both warned Relator to avoid asking questions about the practice.

51.      On or about February 6, 2009, Relator Brian Aryai personally and voluntarily

provided a comprehensive report of his independent investigation into the fraudulent

14

practices and false claims to the former United States Attorney for the Eastern District of New York, Loretta E. Lynch. The criminal investigation of Defendants was not commenced until after Mr. Aryai handed his Report of Investigation to the United States Attorney's Office by hand delivering his findings to United States Attorney Loretta E. Lynch, who personally oversaw the investigation and Deferred and Non-Prosecution Agreements. Relator Brian Aryai also recommended the prosecution of the Defendants in the Eastern District of New York.

52.    In his report, Relator expressly stated that, during his independent investigation, three separate high-ranking BLL employees verified to him the industry-wide nature of the "gratis pay" scheme.

53.    For instance, John Hyers, a BLL superintendent, informed Plaintiff/Relator that the "gratis pay" scheme was a practice that went back at least twenty-five (25) years in the New York Metropolitan Area, and that all construction companies using Union labor participated in the scheme to pay "padded" overtime to Union employees.

54.    Another BLL superintendent, Dennis Prude, who himself falsely certified the accuracy of certified payroll submissions similarly acknowledged the existence of the "gratis pay" scheme and admitted the practice was a longstanding one amongst all the major construction companies operating in the New York Metropolitan Area.

55.    In addition, Frank Voci, a senior vice president at BLL, confirmed the existence and widespread prevalence of the "gratis pay" scheme both at BLL as well as the other major New York Area construction companies, who are named Defendants.

56.    In early June 2010, Aryai met then United States Attorney Loretta Lynch near her office at Cadman Plaza. Among other things, Lynch and Aryai discussed the progress of the investigations into the gratis pay overtime fraud. At that meeting Lynch confirmed Aryai's investigative findings that the gratis pay overtime fraud was indeed an industry-wide

practice.  During this same conversation, Lynch stated that the fraud was so pervasive and

that the companies Aryai had referred to her for prosecution and the prosecution had required

extensive resources that the roll-out of indictments would be staggered probably over several

years.  Also, in that same conversation, Lynch and Aryai had an exchange of comments about

how the United States Attorney's own Office in the Eastern District of New York and the

United States Courthouse in Brooklyn were renovated in a major construction project with the

gratis pay fraudulent overtime scheme.

57.     On or about June 12, 2009, Relator Brian Aryai filed under seal the

original *Qui Tam* Complaint and Jury Demand in the Southern District of New

York.  Because Mr. Aryai had brought the Report of Investigation to the United States

Attorney in the Eastern District of New York, Mr. Aryai directed his prior counsel to also file

his *Qui Tam* Complaint in the Eastern District of New York, so that the criminal and civil

investigations could be handled in parallel proceedings.  For reasons that are unknown,

Relator's prior counsel filed the *Qui Tam* Complaint in the United States District Court for the

Southern District of New York.  Early in the investigation, the United States Attorney

approached the United States Attorney for the Southern District of New York to have Mr.

Aryai's *qui tam* transferred to the Eastern District of New York, but the United States Attorney

for the Southern District of New York "did not acquiesce" in that request.  Attached hereto as

Exhibit M is a copy of an e-mail from United States Attorney Lorretta Lynch to Mr. Aryai

describing her efforts to transfer the case, the reaction she received, and the extent to which

having the civil case pending in the Southern District of New York would curtail her ability to

resolve the civil *qui tam* liability.  *See* Ex. M.  Accordingly, for lack of jurisdiction, the Eastern

District of New York could not resolve the civil *qui tam*, or provide a release to the Defendants

that was any broader than her jurisdictional authority over the criminal prosecution.

16

58.     In a subsequent conversation between Relator and USA Lorretta Lynch the following exchange occurred:  AUSA Lynch stating: "It's not EDNY's fault that your lawyer didn't follow your instructions and instead filed in the SDNY.  He should have known better, especially since you know the process well.  Not sure what Nagel (Relator's former counsel) was trying to do.  Regardless, your claims will not be adversely affected by the DPAs, because they bind ONLY the EDNY from any further civil action against the Defendants. We can't include the civil part because the SDNY will not work with us."

59.     On April 24, 2012, the United States Attorney's Office for the Eastern District of New York filed criminal fraud charges against BLL and James Abadie, the former principal in charge of BLL's New York Office.  Based on the information and substantial assistance provided by Plaintiff/Relator, Abadie pled guilty to conspiracy to commit mail and wire fraud based upon the information provided by Relator Brian Aryai, while BLL admitted to the participating in the gratis pay practice and entered into a Deferred Prosecution Agreement, the contents of which are incorporated herein by reference and attached hereto as Exhibit F.  As each of the criminal investigations were announced, Relator's counsel provided the Assistant United States Attorney in the Southern District of New York handling the *Qui Tam* Complaint with the press release, any press articles and the Informations, as well as the Statements and Agreements resolving the criminal prosecutions of the Defendants.  *See* Exs. F, G, H, and I.

60.     Subsequently, the United States Attorney's Office in the Eastern District of New York, based upon the information provided by Relator Brian Aryai, entered into a Deferred Prosecution Agreement with Tishman Construction whereby it admitted to falsely representing and making materially misleading statements and omissions in billing requisitions to the federal government.  A copy of this this Deferred Prosecution Agreement is incorporated herein by reference and attached hereto as Exhibit G.

61.     On October 13, 2016, following a federal investigation and the initiation of

criminal prosecution, the United States Attorney's Office in the Eastern District of New

York entered into a Deferred Prosecution Agreement with Defendant Plaza Construction

based upon the information provided by Relator Brian Aryai regarding the systemic and

industry-wide false and fraudulent billing practices on government funded projects.  This

Deferred Prosecution Agreement is incorporated herein by reference and attached hereto as

Exhibit H.

62.     Similarly, following a federal investigation and the initiation of criminal

prosecution based upon the information provided by Relator Brian Aryai, the United States

Attorney's Office in the Eastern District of New York entered into a Non-Prosecution

Agreement with another New York construction company, Hunter Roberts Construction

Group, which similarly admitted to falsely representing and making materially misleading

statements and omissions in billing requisitions to the federal government.  A copy of this

Non-Prosecution Agreement and Joint Statement are incorporated herein by reference and

attached hereto as Exhibit I.

63.     Expressly based on the information provided by Relator, the United States

Attorney's Office in the Eastern District of New York continues to investigate the billing

practices of the remaining Defendants.  *See* U.S. Attorneys' Office press releases,

incorporated herein by reference and attached hereto as part of Exhibits F, G, H, & I**.**

64.     Prior to filing the Second Amended Complaint in this case, which substituted

Hunter Roberts as one of the Doe Defendants, Relator's counsel inquired of the Assistant

United States Attorney, who was assigned to the Aryai *qui tam*, whether Relator should file

his SAC under seal to allow the government to review the claim against Hunter Roberts.

Attached hereto as Ex. N is a copy of the e-mail communication whereby after reviewing

the SAC, the United States Attorney for the Southern District of New York declined to

have the SAC filed under seal.

## COUNT I

## VIOLATIONS OF THE FALSE CLAIMS ACT

65.     Each of the foregoing allegations is realleged and incorporated hereby.

66.     As described in this Third Amended *Qui Tam* Complaint, Defendants by and

through their officers, agents, and employees: (i) knowingly presented, or caused. to be

presented false or fraudulent claims for payment or approval; (ii) knowingly made, used, or

caused to be made or used, a false record or statement to get a false or fraudulent claim paid

or approved by the Government; and (iii) conspired to commit a violation of the False Claims

Act.  31 U.S.C. § 3729(a)(1)(A), (B), & (C).

67.     The United States Government and the public have been damaged as a result of

Defendants' violations of the FCA.

## COUNT II

68.     The allegations contained above are realleged and incorporated by reference

as if fully set forth herein.

69.     The ABC Defendants are other construction and/or construction management

companies which performed work on federally funded projects in the New York

Metropolitan area, and who submitted payment requisitions or documents which contained

gratis pay, ghost hours, or other false and inaccurate certified payrolls.

70.      The ABC Defendants knowingly and intentionally made or caused to be

made false statements and false claims in numerous payment requisitions to the United

States Government, in violation of the Federal False Claims Act, 31 U.S.C. §3729 *et. seq.*

WHEREFORE, Relator Brian Aryai on behalf of the United States Government,

prays:

(i) That this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' violations of the False Claims Act;

(ii) That this Court enter a judgment against Defendants for a civil penalty of $11,000.00 for each of Defendants' violations of the False Claims Act;

(iii) That Relator Brian Aryai recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(iv) That Relator Brian Aryai be awarded all reasonable attorneys' fees and costs in bringing this action;

(v)  That in the event the United States Government intervenes in this action, Relator Brian Aryai be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) That in the event the United States Government does not intervene in this action, Relator Brian Aryai be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action; and

 (vii) That Relator Brian Aryai and the United States of America receive all relief to which either or both may be entitled at law or in equity.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues so triable.

Joseph G. Sconzo, Esq.*
PGA Financial Plaza
3399 PGA Boulevard, Suite 180
Palm Beach Gardens, FL 33410
josephsconzolaw@gmail.com

Joshua L. Weiner, Esq.**
BUDD LARNER, PC
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
Tel.:   973-379-4800
Fax.:   973-379-7734
jweiner@buddlarner.com

Robert W. Sadowski, Esq.
SADOWSKI KATZ LLP
830 Third Avenue, 5th Floor
New York, New York 10022
Tel.:  (646) 503-5341
rsadowski@sadowskikatz.com

*Attorneys for Plaintiff/Relator*

By:___s/Robert W. Sadowski_____

Dated: June 21, 2018                              Robert W. Sadowski

*Pro Hac Vice*

**Local Counsel*