```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA ex rel.                              :
BRIAN ARYAI,                                                  :
                                       Relator,               :    09 Civ. 5456 (LGS)
                                                              :
              -against-                                       :    OPINION AND ORDER
                                                              :
SKANSKA, et al.,                                              :
                                       Defendants.            :
------------------------------------------------------------- X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/2019
```

LORNA G. SCHOFIELD, District Judge:

Relator Brian Aryai ("Relator") brings this action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA") against several construction companies whom Relator alleges engaged in fraudulent payroll practices. Defendants Tishman Construction Company ("Tishman"), Plaza Construction Corporation ("Plaza"), Turner Construction Company ("Turner"), Hunter Roberts Construction Group ("Hunter Roberts") and Skanska, (collectively, "Defendants") move to dismiss the Third Amended Complaint (the "TAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Relator cross-moves for partial summary judgment. For the reasons discussed herein, Defendants' motion to dismiss is granted and Relator's cross-motion for summary judgment is denied as moot.

## I. BACKGROUND

The facts below are taken from the TAC and exhibits attached to the TAC. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016). The facts alleged in the TAC are assumed to be true for purposes of this motion. *See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 175 (2d Cir. 2016).

Relator was the former Senior Vice President of Finance at Bovis Lend Lease LMB, Inc. ("BLL"), an international construction firm.  In the course of his employment at BLL, Relator learned that there was a longstanding, industry-wide fraudulent payroll practice known as "gratis pay."  Union foremen working on government-funded construction projects routinely recorded on their timesheets two hours of overtime per day for time they did not work.  The construction companies then submitted these fraudulent pay records to federal, state and municipal government entities.

Relator learned that Defendants participated in the gratis pay practice.  BLL executives told Relator that gratis pay was pervasive in the construction industry and that Defendants routinely submitted payment requisitions based on fraudulent payroll records.  Two BLL senior executives told Relator that the practice was in place pursuant to a "silent" agreement between the construction unions and Defendants.  Relator's investigation included numerous interviews of union foremen and a personal visit to a construction site.

Shortly before his termination from BLL, Relator spoke to Plaza, Tishman and Skanska executives who confirmed their respective companies' past, current and future participation in the gratis pay scheme.  The Plaza and Tishman executives warned Relator to avoid asking questions about the practice.  On January 22, 2009, Relator was terminated from BLL.

On February 6, 2009, Relator provided a comprehensive report regarding his investigation to Loretta Lynch, who at the time was a former U.S. Attorney for the Eastern District of New York.  In June 2010, Relator again met with Lynch, who had returned to office as a U.S. Attorney.  At the 2010 meeting, Lynch confirmed the widespread payroll fraud and stated that her office would roll out indictments over the next several years.

On June 12, 2009, Relator filed this *qui tam* action. The defendants named in the original Complaint included Skanska, Turner, Tishman, Plaza, BLL and 100 "John Doe" entities, but not Hunter Roberts.

On April 24, 2012, the U.S. Attorney's Office for the Eastern District of New York filed criminal charges against BLL and James Abadie, the former principal in charge of BLL's New York office. BLL admitted to participating in the gratis pay practice and entered into a deferred prosecution agreement. Subsequently, the U.S. Attorney's Office for the Eastern District of New York entered into deferred prosecution agreements with Tishman (the "Tishman DPA") and Plaza (the "Plaza DPA"), and a non-prosecution agreement with Hunter Roberts (the "Hunter Roberts NPA"). The Tishman DPA, Plaza DPA and Hunter Roberts NPA are attached to the TAC as exhibits G, H and I, respectively. The actions taken by the U.S. Attorney's Office against Tishman, Plaza and Hunter Roberts were the result of information provided by Relator regarding the gratis pay scheme.

The DPAs and NPA set forth that Tishman, Plaza and Hunter Roberts participated in a scheme to defraud government contracting and funding agencies by making misleading statements and omissions in billing requisitions and other documents. Specifically, the DPAs and NPA state that the companies added one or two hours of unworked or unnecessary overtime per day to the timesheets of labor foremen. The DPAs and NPA state that Tishman and Plaza engaged in the practice from at least 1999 until approximately 2009, and Hunter Roberts engaged in the practice from approximately 2006 through 2011.

On April 13, 2018, Relator filed the Second Amended Complaint, which added Hunter Roberts as a defendant. On June 22, 2018, Relator filed the TAC. Drawing all reasonable inferences in Relator's favor, the TAC alleges that Defendants Tishman, Plaza, Skanska and

Hunter Roberts engaged in the fraudulent conduct both before and after March 23, 2010.  The TAC does not specify when Defendant Turner participated in the gratis pay scheme.

## II.     STANDARD

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)).  In deciding motions to dismiss under Rule 12(b)(1), a court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  On a Rule 12(b)(6) motion, "all factual

allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

##### 1. Jurisdiction and the Public Disclosure Bar

This Opinion applies the pre-amendment version of § 3730(e)(4) to claims based on fraudulent conduct occurring prior to March 23, 2010, and the current version of § 3730(e)(4) to claims based on later conduct.

Prior to amendments effective March 23, 2010, the FCA included a public disclosure bar that was jurisdictional in nature:

> (a) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (b) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2006). In 2010, § 3730(e)(4) was amended by the Patient Protection and Affordable Care Act ("PPACA"), which removed the jurisdictional bar and expanded the definition of "original source." *See United States ex rel Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 80 (2017) (holding that "the public disclosure bar is no longer jurisdictional"). The current version of § 3730(e)(4) provides:

5

    (a) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed --

        (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

        (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

        (iii) from the news media,

    unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

    (b) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4).

With respect to any false claims alleged to have been submitted or paid *before* March 23, 2010, the pre-2010 version of § 3730(e)(4) applies. It is well-established that the 2010 amendments to the FCA do not have retroactive effect. *See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010); *accord Monaghan v. Henry Phipps Plaza West, Inc.*, 531 Fed. App'x 127, 129 n.3 (2d Cir. 2013) (summary order).

With respect to any false claims alleged to have been submitted or paid *on or after* March 23, 2010, the 2010 (current) version of § 3730(e)(4) applies. *See United States ex rel. Daugherty v. Tiversa Holding Corp.*, 342 F. Supp. 3d 418, 427 (S.D.N.Y. 2018) ("[T]he pre-2010 version of the public disclosure bar applies to fraudulent claims paid by the Government before March 23, 2010, and the current version applies to claims paid after that date, or presented after that date and never paid."); *United States ex rel. Kester v. Novartis Pharm. Corp.*, 43 F. Supp. 3d 332,

6

354, 369 (S.D.N.Y. 2014) (applying the pre-amendment version of § 3730(e)(4) to claims submitted before March 23, 2010).

Defendants assert that the pre-amendment version of § 3730(e)(4) applies here, regardless of when the allegedly fraudulent conduct occurred, because this case was pending at the time of the amendment. Defendants rely on cases stating that the 2010 version of § 3730(e)(4) does not apply to actions, like this one, that were pending before enactment of the amendments. *E.g.*, *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 n.1 (2011) ("Because the amendments are not applicable to pending cases, this opinion refers to the statute as it existed when the suit was filed." (citations omitted)); *Monaghan*, 531 Fed. App'x at 129 n.3 ("Although this provision was amended in 2010, the amendment does not apply retroactively to cases, like this one, which were pending prior to the amendment.").

Defendants' reliance on these authorities is misplaced because, in each case, the FCA claims were based *solely* on conduct predating the 2010 amendments. *See Schindler Elevator*, 563 U.S. at 404–07; *Graham County*, 559 U.S. at 283–85; *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1124–26 (9th Cir. 2015); *Monaghan*, 531 Fed. App'x at 128–29. Moreover, the rule set forth in these cases is based on the presumption against retroactive legislation -- a presumption rooted in the principle that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997) (internal quotation marks omitted). It would contravene this principle to bar application of a law to conduct occurring when the law was in effect.

This Opinion applies the pre-amendment version of § 3730(e)(4) to determine whether it has jurisdiction over the TAC's claims, insofar as the claims are based on fraudulent conduct occurring prior to March 23, 2010.  *See Kester*, 43 F. Supp. 3d at 354, 369.

### 2. Application

In determining whether the public disclosure bar applies, courts must consider (1) whether the action is "based upon" a public disclosure and (2) if so, whether the suit may proceed because the relator is an "original source" of the information on which the complaint is based.  *See* 31 U.S.C. § 3730(e)(4) (2006); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157–59 (2d Cir. 1993); *accord United States ex rel. JDJ & Assocs. LLP v. Natixis*, No. 15 Civ. 5427, 2017 WL 4357797, at *5 (S.D.N.Y. Sept. 29, 2017).

An action is "based upon" a public disclosure if it is "based in any part upon publicly disclosed allegations or transactions."  *Kreindler*, 985 F.2d at 1158 (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553 (10th Cir. 1992)); *accord United States ex rel. Hanks v. U.S. Oncology Speciality, LLP*, 336 F. Supp. 3d 90, 110 (E.D.N.Y. 2018).  "[P]ublic disclosure of the allegations divests district courts of jurisdiction over *qui tam* suits, regardless of where the relator obtained his information."  *Kreindler*, 985 F.2d at 1158 (quoting *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 324 (2d Cir. 1992)); *accord Hanks*, 336 F. Supp. 3d at 110.  That is, a relator's allegations need not be "actually derived" from publicly disclosed information for the bar to apply; the question instead is whether the allegations are "substantially similar" to the public disclosures.  *Hanks*, 336 F. Supp. 3d at 110

(applying the pre-amendment version of § 3730(e)(4)); *accord Kester*, 43 F. Supp. 3d at 346 (same).[1]

Individuals are an "original source" -- and therefore are exempted from the public disclosure bar -- if they have "direct and independent knowledge of the information on which the allegations are based and [if they] voluntarily provided the information to the Government before filing an action . . . which is based on the information." 31 U.S.C. § 3730(e)(4)(b) (2006). A relator does not have "direct and independent knowledge," and therefore is not an original source, "if a third party is the source of the core information upon which the *qui tam* complaint is based." *See United States v. N.Y. Med. Coll.*, 252 F.3d 118, 121 (2d Cir. 2001) (internal quotation marks omitted); *accord Daugherty*, 342 F. Supp. 3d at 428.

### a. Hunter Roberts

The TAC's claims against Hunter Roberts are based upon a public disclosure -- the Hunter Roberts NPA. The non-prosecution agreement describes a scheme to defraud government agencies by making false statements in billing documents. Specifically, the Hunter Roberts NPA states that from "approximately 2006 through 2011," Hunter Roberts "maintained a systemic practice . . . of . . . adding one or two hours of unworked or unnecessary 'guaranteed' overtime per day to the time sheets for Labor Foremen." These statements are substantially similar -- indeed, are nearly identical -- to the gratis pay allegations in the TAC. Relator does not dispute that the claims against Hunter Roberts are based upon a public disclosure; the sole issue in contention is whether Relator is an original source.

---

[1] Although the Second Circuit has not used the term "substantially similar" in the context of the pre-amended public disclosure bar, some courts in this Circuit have used the term to refer to the rule that a relator's allegations need not be actually derived from a public disclosure for the bar to apply. *See United States ex rel. Patriarca v. Siemens Healthcare Diagnostics, Inc.*, 295 F. Supp. 3d 186, 196 (E.D.N.Y. 2018); *Kester*, 43 F. Supp. 3d at 346 (S.D.N.Y. 2014).

Relator is not an "original source" for purposes of the public disclosure bar. The TAC does not allege facts indicating that Relator had "direct and independent knowledge" of Hunter Roberts's allegedly fraudulent conduct. The only substantive allegations in the TAC specific to Hunter Roberts relate to the non-prosecution agreement.

Because the TAC's Hunter Roberts allegations are based upon a public disclosure and Relator is not an original source, the FCA claims against Hunter Roberts are dismissed for lack of subject matter jurisdiction insofar as they are based on false claims submitted or paid prior to March 23, 2010.

### b. Tishman and Plaza

The TAC's claims against Tishman and Plaza are based on public disclosures -- the Tishman DPA and Plaza DPA. The Tishman and Plaza DPAs set forth that the two companies defrauded "federal, state and local government contracting and funding agencies" by making misstatements and omissions in billing requisitions. The DPAs state that from at least 1999 until approximately 2009, Tishman and Plaza added "one or two hours of unworked or unnecessary 'guaranteed' overtime per day" for labor foremen. Again, these statements are substantially similar to the gratis pay allegations in the TAC. Relator does not dispute that the claims against Tishman and Plaza are based upon a public disclosure; the sole issue in contention is whether Relator is an original source.

Relator is not an "original source" with respect to Tishman and Plaza. Aside from the deferred prosecution agreements themselves, the only substantive allegation in the TAC specific to Tishman and Plaza is that Relator spoke to executives who confirmed the companies' "past, current, and future involvement and participation in the gratis pay scheme," and who "warned Relator to avoid asking questions about the practice." This allegation does not demonstrate

10

"direct and independent knowledge" because the source of Relator's information regarding the fraudulent conduct was a third party. *See N.Y. Medical College*, 252 F.3d at 121 ("[A] *qui tam* plaintiff does not satisfy the [direct and independent knowledge] requirement if a third party is the source of the core information upon which the *qui tam* complaint is based." (internal citations and quotation marks omitted)).

Nor does the TAC demonstrate direct and independent knowledge of an industry-wide fraud. Relator learned of the industry-wide gratis pay scheme through conversations with third parties. Although the TAC alleges that Relator engaged in some independent investigation, this does not suffice to demonstrate direct and independent knowledge. *See Kreindler*, 985 F.2d at 1159 ("[T]he fact that [Relator] conducted some collateral research and investigations regarding the [alleged fraud], as would be customary in such litigation, does not establish [direct and independent knowledge] . . . [a third party] was clearly the source of the core information.").

Thus, Relator is not an original source and the claims against Tishman and Plaza are dismissed for lack of subject matter jurisdiction insofar as they are based on false claims submitted or paid prior to March 23, 2010.

**B.     Timeliness**

As discussed *supra*, the Court lacks jurisdiction over the claims against Hunter Roberts to the extent they are based on false claims submitted or paid prior to March 23, 2010. To the extent that the claims against Hunter Roberts are based on later conduct, they are time-barred and are therefore dismissed. 31 U.S.C. § 3731(b)(1) provides, in relevant part, that "[a] civil action under section 3730 may not be brought . . . more than 6 years after the date on which the violation of [the FCA] is committed." 31 U.S.C. § 3731(b)(1). "[T]he six-year limitations period of § 3731(b)(1) begins to run on the date the [allegedly fraudulent claim on the

government] is made, or, if the claim is paid, on the date of payment." *Kreindler*, 985 F.2d at 1157 (internal citation and quotation marks omitted); *accord United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 198 (S.D.N.Y. 2016).

The only allegations of fraud in the TAC that are specific to Hunter Roberts relate to the non-prosecution agreement, which states that Hunter Roberts engaged in the gratis pay scheme from approximately 2006 through 2011. Hunter Roberts was not named as a party until April 13, 2018 -- over six years after the company engaged in this allegedly fraudulent conduct.

Relator argues that the claims against Hunter Roberts are not time-barred because the TAC relates back to the original Complaint. Federal Rule of Civil Procedure 15(c)(1) provides that an amendment to a pleading relates back to the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Rule 15(c)(1)(C) is implicated here, since the joinder of Hunter Roberts "changes the party or the naming of the party against whom" the FCA claims are asserted. Fed. R. Civ. P. 15(c)(1)(C).

Relation back does not apply to the claims against Hunter Roberts. Although Rule 15(c) allows for the relation back of an amendment due to "a mistake concerning the proper party's

identity," Fed. R. Civ. P. 15(c)(1)(C)(ii), "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995).

Relator attempts to cast doubt on the vitality of *Barrow* in light of the Supreme Court's decision in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). Relator's arguments implicate two separate questions -- (1) what constitutes a "mistake" for purposes of Rule 15(c)(1)(C), and (2) from whose perspective a "mistake" is assessed.

Regarding the first question, Relator's failure to name Hunter Roberts due to his unawareness of Hunter Roberts's identity or conduct is not a "mistake." "*Krupski* neither abrogated nor reconfigured *Barrow*'s holding that an amendment to replace a John Doe defendant is made 'not to correct a mistake but to correct a lack of knowledge' and is therefore not a mistake under Rule 15(c)(1)(C)." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Barrow*, 66 F.3d at 470).

Regarding the second question, *Krupski* held that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the prospective defendant] as the proper defendant, but whether [the prospective defendant] knew or should have known that it would have been named as a defendant but for an error." *Krupski*, 560 U.S. at 548. In other words, what matters is "the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.*

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Id.* at 550.

The Court in *Krupski* elaborated on this principle in its discussion of *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000). In *Nelson*, the Supreme Court held that the plaintiff (Adams) could not, under Rule 15(c), add the sole shareholder of a company (Nelson) as a defendant after Adams became concerned that the company had insufficient funds to pay an attorney's fees award. *See id.* at 463–64, 467 n.1. In that case, the Court in *Krupski* explained,

> [T]here was nothing in the initial pleading suggesting that Nelson was an intended party, while there was evidence in the record (of which Nelson was aware) that Adams sought to add him only after learning that the company would not be able to satisfy the judgment. This evidence countered any implication that Adams had originally failed to name Nelson because of 'mistake concerning the proper party's identity,' and instead suggested that Adams decided to name Nelson only after the fact in an attempt to ensure that the fee award would be paid.

*Krupski*, 560 U.S. at 552 (internal citations and quotation marks omitted). Thus, courts should look to the initial pleading and the plaintiff's conduct in determining whether a party knew or should have known that it would have been named as a defendant but for a mistake. *See id*.

In sum, *Krupski* requires the Court to assess the existence of a "mistake" from the defendant's perspective (by reference to the initial pleading and the plaintiff's conduct), and *Ceara* confirms that a mere lack of knowledge of a defendant's identity or conduct does not constitute such a mistake. Applying these principles, relation back does not apply to Hunter Roberts. As in *Nelson*, the initial pleading is void of any indicia that Hunter Roberts was an intended defendant. The original Complaint lacks any allegation relating specifically to Hunter Roberts, by name or otherwise. Although there are general allegations about generic "Defendants ABC Corporations 1-100" -- described as "companies engaged in the business of construction management and/or general construction and who knowingly submitted fraudulent payroll amounts to a governmental entity for payment" -- nothing in the original Complaint indicates that Hunter Roberts "knew or should have known that the action would have been

14

brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).

Relator's conduct -- naming Hunter Roberts as a Defendant only after announcement of Hunter Roberts's non-prosecution agreement -- buttresses this conclusion.  *See Krupski*, 560 U.S. at 552.  Because relation back does not apply, the claims against Hunter Roberts are time barred and therefore dismissed.

### C.     Rule 9(b)

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires that "a party . . . state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Chorches,* 865 F.3d at 81.  "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted).  In *qui tam* cases, "a complaint can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge."  *Chorches*, 865 F.3d at 86. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), but still "must be alleged plausibly in accordance with Rule 8," *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015).

#### 1.  The Claims Against Turner Do Not Satisfy Rule 9(b)

The TAC contains no allegations of fraudulent conduct specific to Turner.  The only allegations implicating Turner are allegations about the Defendants *as a group*.  For example, the

15

TAC alleges that "Defendants knew of this industry wide practice, accepted the fraudulent time records from the Union, and then passed [them] on to . . . governmental agencies . . . ." The TAC likewise alleges that "Defendants have paid for . . . 'ghost hours,' and then recouped these monies from the federal, state and local government funds."

Allegations of this nature are insufficient to survive dismissal under Rule 9(b). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *accord Related Cos., L.P. v. Ruthling*, No. 17 Civ. 4175, 2017 WL 6507759, at *10 (S.D.N.Y. Dec. 18, 2017). "Because Rule 9(b) requires that a defendant receive fair notice of the fraud claim, 'a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must plead with particularity by setting forth *separately* the acts complained of by *each defendant*.'" *United States v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07 Civ. 292, 2014 WL 3905742, at *19 (S.D.N.Y. Aug. 7, 2014) (quoting *Ningbo Prods. Import & Export Co. v. Eliau*, No. 11 Civ. 650, 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011)). Because the TAC contains no allegations of fraudulent conduct that are specific to Turner, the claims against Turner are dismissed.

### 2. The Claims Against Tishman and Plaza Do Not Satisfy Rule 9(b)

The TAC contains two allegations that relate specifically to Tishman and Plaza's fraudulent conduct. First, the TAC alleges that Relator spoke to former Tishman and Plaza executives who confirmed the companies' involvement in the gratis pay scheme. Second, the TAC references Tishman and Plaza's deferred prosecution agreements, which state that the companies made misleading statements and omissions in billing requisitions.

These allegations do not sufficiently allege fraudulent conduct because they relate to false claims submitted *prior to* March 23, 2010.  As discussed above, the Court lacks subject matter jurisdiction over the claims against Tishman and Plaza insofar as they are based on pre-March 23, 2010 conduct.  Relator's conversation with the Tishman and Plaza executives occurred "shortly prior to [Relator's] termination" from BLL, which occurred on January 22, 2009.  Although the TAC alleges that the executives "confirmed" the companies' "*future* involvement and participation in the gratis pay scheme," this conjecture about the hypothetical submission of a false claim at some indeterminate point in the future falls well short of the heightened pleading requirements of Rule 9(b).  *See United States ex rel. Tessler v. City of New York*, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) ("To comply with Rule 9(b), the complaint must be supported by more than 'conclusory statements' or 'hypotheses,' and it must set forth 'particularized allegations of fact.'" (quoting *Ladas*, 824 F.3d at 26–27)); *United States ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 266 (S.D.N.Y. 2014) (allegations amounting to speculation or conjecture are not sufficient under Rule 9(b)).  Regarding the Tishman and Plaza DPAs, both state that the companies engaged in the fraudulent billing practices until approximately 2009.

The TAC contains no other allegations of fraud specific to Tishman and Plaza, other than allegations regarding Defendants as a group.  Such allegations are not sufficient under Rule 9(b). *See Mills*, 12 F.3d at 1175.  Because the TAC fails to plead Tishman and Plaza's fraudulent conduct with particularity, the claims against Tishman and Plaza are dismissed.

### 3. The Claims Against Skanska Do Not Satisfy Rule 9(b)

The TAC contains one allegation of fraud specific to Skanska -- that Mike McNally, an executive at Skanska, "verbally confirmed [Skanska's] past, current, and future involvement and

17

participation in the gratis pay scheme."[2]  This allegation fails to plead fraudulent conduct with particularity because it lacks required specifics about the allegedly fraudulent conduct.  *See Chorches*, 865 F.3d at 81.  The TAC does not specify which of Skanska's many projects are implicated, nor does it sufficiently allege "where and when" the fraudulent conduct occurred, *id.* -- the TAC's allegation that the conduct occurred in the "past, [present], and future" will not suffice.  The TAC sheds no light on which government entities Skanska fraudulently billed and in what amount.  The TAC thus fails to create a "strong inference that specific false claims were submitted to the government."  *Id*. at 86.  *See United States ex rel. Vierczhalek v. MedImmune, Inc.*, 345 F. Supp. 3d 456, 465 n.3 (S.D.N.Y. 2018) (holding that FCA allegations did not satisfy the requirements of Rule 9(b) where relator offered no specifics as to how, where and when defendant engaged in the allegedly fraudulent conduct); *United States ex rel. Grubea v. Rosicki, Rosicki & Associates, P.C.*, 318 F. Supp. 3d 680, 697 (S.D.N.Y. 2018) ("The allegations . . . are entirely conclusory.  Relator states merely that AOSS invoiced McCabe at above-market rates.  Relator nowhere specifies the amount AOSS charged (i.e. the fraudulent statement)."); *Hanks*, 336 F. Supp. 3d at 118 (complaint insufficient where it "broadly allege[d] that each of the 18 Defendants filed unspecified claims with one or more of the seven federal health care programs" and failed to specify "when . . . the claims at issue were filed or how many false claims each Defendant allegedly filed").  Because the TAC fails to plead Skanska's fraudulent conduct with particularity, the claims against Skanska are dismissed.

---

[2] This is the same allegation that was made with respect to Tishman and Plaza.  Unlike Tishman and Plaza, however, the public disclosure bar does not bar any part of the claims against Skanska.  Therefore, the Court must consider whether McNally's assertions about Skanska's "past" and "current" conduct satisfies the requirements of Rule 9(b).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Relator's cross-motion for partial summary judgment is DENIED as moot. The Clerk of Court is respectfully directed to close the motions at Docket Nos. 132 and 144.

Dated: March 19, 2019
      New York, New York

                                            **LORNA G. SCHOFIELD**
                                           **UNITED STATES DISTRICT JUDGE**